## BUTLER MFG. CO. v. ENTERPRISE CLEANING CO. et al.
### No. 10321.

Circuit Court of Appeals, Eighth Circuit.
Jan. 28, 1936.

Thomas E. Scofield, of Kansas City, Mo. (Spencer F. Harris and Henry L. She-

nier, both of Kansas City, Mo., and John H. Bruninga, of St. Louis, Mo., on the brief), for appellant.

Henry M. Huxley, of Chicago, Ill. (Delos G. Haynes, of St. Louis, Mo., and Ralph Munden, of Chicago, Ill., on the brief), for appellee Filtration Products Co.

Harry A. Beimes, of St. Louis, Mo., for appellee Enterprise Cleaning Co.

Before GARDNER, WOODROUGH, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

This case involves a contest between systems employed in the dry cleaning of textile materials, such as soiled garments and the like. Appellant is the owner of three patents: The Fenton patent, No. 1,-669,235, issued May 8, 1928; the Hatfield patent, No. 1,704,604, issued March 5, 1929; and the Hatfield-Alliott patent, No. 1,728,-343, issued September 17, 1929. It is charged that three claims in each patent are infringed by the process employed by appellee Enterprise Cleaning Company, and recommended by appellee Filtration Products Company. The latter company accordingly sought and was granted leave to intervene, was made a defendant, and filed answer. The Fenton patent is for a "Dry Cleaning System." The specification states that the invention has for its object economy in dry cleaning, and that it will substantially do away with the necessity of distilling the dry-cleaning fluid. It embraces both the process and the apparatus for accomplishing the stated results. Only process claims are here involved, to wit, Nos. 1, 11, and 14. Claim 1 reads as follows: "In dry-cleaning, the herein described process which comprises subjecting soiled textile material containing greasy or oily material to the action of a volatile organic solvent which is substantially nonmiscible with water; drawing off the solvent with accumulated impurities; agitating the said solvent carrying impurities together with a solid material insoluble therein, which material possesses good adsorbing properties; separating the solid adsorbing material with accumulated impurities from the said solvent by filtration; and returning the solvent free from said adsorbing material and adsorbed impurities in a substantially continuous manner to the first-mentioned step of the process, until the said textile material has been cleaned to the desired extent."

The steps in this process are explained by the language of the specification and the illustrations of the accompanying drawings. The specification describes the operation thus: "The gasoline as above stated removes the greases and oils and also the solid dirt from the cloth or other material being washed in the washer 20. When this liquid is agitated with Fuller's earth or like adsorbing material in the agitator tank, the Fuller's earth will adsorb and take up both the solid impurities and the oils and greases from the gasoline, leaving the said gasoline completely purified, and when the solid material has been separated from the gasoline in the separator 72 the said gasoline is entirely clean and may be then run back into the washer 20."

The drawings consist of nine figures covering three pages, too extended to set out in full here. It will suffice to point out that figure 1 shows a washer (20); figures 1 and 8 an agitator tank distinct from the washer, and figure 1 a centrifugal separator or filter (72). Accordingly, we are able to resolve the process described by this claim into the following essential steps or elements: (1) Subjecting the textile material to a volatile organic solvent such as gasoline, naphtha, and the like; (2) drawing off the solvent with accumulated impurities; (3) agitating in an agitator tank the said solvent carrying impurities, together with a solid material insoluble therein, which material possesses good adsorbing properties; (4) separating, in a centrifugal separator, this material from the solvent by filtration; (5) returning the solvent free from said material and impurities in a substantially continuous manner to the first-mentioned step of the process, that is, the washer.

From the foregoing, as explained and clarified by specification and drawings, it appears that the textile material to be cleaned is placed in a washer containing the solvent. There the rotation of washer drum causes the clothing to be tumbled about with the solvent, which absorbs and dissolves the greases, oils, and other soluble material, and loosens the dirt so that it readily goes into suspension in the solvent. The liquid carrying these impurities is then drawn off from the washer into the agitator tank, into which is fed the clarifying material described as having good adsorbing properties; thence, after agitation, the mixture is carried to the separator or filter wherein this solid adsorbing material

with accumulated impurities is separated from the solvent, which is then returned to the washer in a substantially continuous manner.

Claim 11 differs in no substantial degree from claim 1. The "solid adsorbing material" of the latter is described as a "co-agulating adsorbent agent" in the former.

Claim 14 reads thus: "A process for the recuperation of dry cleaning fluids which comprises mixing therewith a suitable agent for the coagulation of the colloid impurities, agitating the mixture, and filtering the fluid from the coagulating agent and the coagulated impurities."

This claim, while describing no specific process, is evidently intended to cover any process for the recuperation of dry-cleaning fluids which employs the steps recited and disclosed in the specification and accompanying drawings. It is pointed out that this claim 14 is directed to a process for recuperation of dry-cleaning fluids, and not to dry-cleaning processes, as are claims 1 and 11. This is borne out by Fenton's statements in his letter to the Commissioner of Patents, of January 3, 1924, while his application was under consideration. He says: "Applicant has added a claim to the method of purifying the cleaning liquid, wherein the office suggests that invention lies. * * * It must be remembered that there is a distinct and vital difference between filtering out the impurities which are present in solid form and removing the dissolved impurities or those in colloid form."

The colloidal impurities referred to are such substances as diffuse slowly, if at all. In the specification, especial emphasis is placed upon the presence of the agitator tank. The patentee says: "While a small quantity of the dirt could be separated by simple filtration, if the agitator tank and clarifying material supplied were omitted, the result would not be satisfactory, since the odors and greases would not be sufficiently removed from the clothing."

When this patent was before the Patent Office, claims 1 and 11, with others, were rejected by the Examiner on the ground that they were held to involve four general steps: (1) Subjecting textiles to a cleaning agent which is a solvent for grease; (2) withdrawing the cleaning agent; (3) purifying the cleaning agent; (4) returning the purified cleaning agent to step 1. This combination of steps was held to be old as shown by patent to Traube, No. 1,291,266,

in reference. On appeal to the Board of Examiners-in-Chief, the applicant combatted this criticism as follows: "The dirty liquid is pumped from the washer to a tank, is fed in measured quantities from the tank to an agitator, is mixed in said agitator with a solid material possessing good absorbing qualities. * * * Referring to the patent to Traube, this patent fails to show the agitator. * * * From applicant's viewpoint Claim 1 covers five separate and distinct steps which are indicated in the Claim by being set apart by semicolons. Even admitting that Traube has the four steps as stated in the Examiner's statement of the reference, nevertheless it is not believed that a process which has four steps is a proper anticipation of one which has five." The board, holding that the Traube specification contained "no reference to a possible agitation or agitation means, an important step of appellants' process or apparatus," etc., was of opinion that "in the absence of more pertinent art" the claims were patentable.

The Hatfield patent is for "Purifying Dry-Cleaning Solvent." The specification states that "hitherto the solvent used for this purpose has been clarified and dehydrated by various means, such as processes of filtration, the use of centrifugal separators, or dissociation, or precipitation by various chemical re-agents. Tests have shown, however, that in no cases is the effluent perfectly free of moisture and foreign matter." The applicant continues as follows: "I have now found that if, in the process of dry cleaning, the soiled solvent is treated with a finely divided porous cellular silica (hereinafter referred to as filter aid) of a sufficiently low specific gravity and the solvent containing the particles of the said filter aid in suspension is passed to a filter, the filtrate is substantially free of moisture and foreign matter and can be passed back to the washing machine in a continuous cyclic process."

The dirty solvent is mixed with the filter aid after it has passed out of the washing machine. An agitating tank is contemplated but "instead of the use of an agitating tank the filter aid may be run or pumped continuously during the process into a pipe-line along which the solvent passes from the washing machine to the filter press and such pipe-line may be suitably designed to assist in the thorough mixing of the filter aid and any reagents that may be employed with the solvent."

The claims involved are 1, 2, and 7. Claim 1 reads thus: "A process for clarifying and dehydrating the soiled solvent of washing machines used for dry cleaning, consisting in withdrawing the soiled solvent from the washing machine, adding to the soiled solvent finely divided porous cellular silica of low specific gravity, passing the solvent containing particles of said silica in suspension to a filter, there filtering the solvent. and then returning the filtered solvent to the washing machine in a continuous cyclic process."

The following are the steps in this process: (1) Withdrawing the soiled solvent from the washing machine; (2) adding thereto finely divided porous cellular silica of low specific gravity; (3) passing the solvent containing particles of the silica in suspension to a filter; (4) filtering the solvent; (5) returning the filtered solvent to the washing machine in a continuous cyclic process.

Claim 2 is identical with claim 1, with the addition of the following words not pertinent here: "The rate of passing the solvent through the washing machine being adapted to change the bath at least once in every five minutes."

Claim 7 contains the same steps, but in the following order of statement: (1) Withdrawing the soiled solvent from the washing machine; (2) passing solvent to a filter; (3) filtering; (4) returning filtered solvent to washing machine in a continuous cyclic process; (5) "during the process adding finely divided porous cellular silica to the soiled solvent." This form of statement was evidently intended to cover a process in which an equivalent to the agitating tank is employed as quoted above from the specification.

It will be seen that the claims of this patent in suit each involve five general steps, and that the filter aid employed is added after the soiled solvent is withdrawn from the washing machine. It will further be noted that no drawings accompanied this application, and that the steps of the process follow · closely in substance those of the Fenton patent. In fact, the only apparent differences are the permissible substitution of an equivalent for the agitating tank, and the use of the porous cellular silica as a filter aid, instead of those designated and suggested by Fenton, who says: "I have referred above to the use of Fuller's earth as the absorbing or clarifying material. The invention is not restricted to the use of this specific material, but numerous other materials acting in a similar manner may be employed; for example, pulverized talc or diatomaceous earth." In the specification it is this selection of the silica as a filter aid that Hatfield emphasizes as the advance over the prior art which constitutes novelty and invention.

The Hatfield and Alliott patent in suit contains three claims, 1, 2, and 3, against which infringement is charged. The only substantial difference between these claims and those of the Hatfield patent, No. 1,-704,604, is the addition to the cleaning fluid of "soap of high solubility and emulsifying power having little tendency to disassociate." In the specification the applicants say that they have now discovered an improved process wherein both the filter aid disclosed in said patent 1,704,604 and the dry-cleaning soap just described may be employed in conjunction to effect an improved result. It is stated that the soap theretofore employed, being imperfectly soluble, and having a tendency to disassociate, has imposed a clogging effect upon the filter press, which is absent in this new process.

The facts concerning the alleged infringement are thus found by the trial court:

"Intervener-defendant, Filtration Products Company, prior to the filing of the Bill of Complaint herein, installed at the plant of defendant, Enterprise Cleaning Company, during the year 1927, and elsewhere within the United States, apparatus for cleaning clothes, as diagrammatically illustrated in Filtration Products Company's Exhibit 1, a reproduction of which is attached hereto, and has recommended the use of the following processes of cleaning in connection with such apparatus, to-wit:

"(a) The clothes to be cleaned are put into the washer with a solvent, such as naphtha, and a diatomaceous earth filter aid, specifically what is known as 'Hyflo-Supercel,' is added in the washer. The washer is oscillated back and forth. The pump is started, and the solvent with the filter aid carried thereby is withdrawn from the washer, together with the dirt extracted from the clothes. The trap serves to catch buttons and heavy objects of that kind which may be drawn off. The liquid containing the filter aid and dirt is forced by the pump to the filter, where the filter aid and dirt build up a porous cake, the filtered

solvent being forced back to the washer in a continuous process. When the cleaning of the clothes is completed, the operation is stopped and the clothes removed from the washer. No filter aid is added to the solvent at any point in the system except within the washer.

"(b) This process is the same as that described in connection with (a) of this finding, except that a liquid known as hexalin, which is an alcohol, is also added in the washer.

"(c) For a short period, intervener-defendant sold, but not to Enterprise Cleaning Company, a gasoline soluble soap, and recommended, but not to Enterprise Cleaning Company, the use of such soap in the process described in (a) of this finding, the soap to be added in the washer. The use of this soap did not prove satisfactory and its sale and recommendation for use were discontinued by intervener-defendant."

The court also found that in the process described under (a) the Enterprise Cleaning Company has added to the washer a soap known as "Dri-sheen," and in addition to the "Hyflo-Supercel" a substance called "Morgan Sweetener," which is fuller's earth. The court also found that "Dri-sheen" is not a highly soluble soap. All these findings receive substantial support in the testimony. Exhibit 1, the diagrammatic illustration of the alleged infringing process is here reproduced.

appellant's processes before the soiled solvent is withdrawn and the filter aid added, and still the subsequent agitation by tank, or continuous pipe line pumping, is claimed and emphasized. It is apparent that the alleged infringing process lacks an essential step claimed in the patents in suit.

The conclusions of law of the trial court were:

"If the claims of the Fenton patent are construed to cover the processes used by the defendant Enterprise Cleaning Company, or recommended by the intervener-defendant Filtration Products Company, they are invalid as not involving invention over the prior art.

"The Hatfield Patent No. 1,704,604 has not been infringed by defendants. Claims 1, 2 and 7 of the Hatfield Patent No. 1,-704,604 are invalid as anticipated and involving no invention over the prior art.

"The Hatfield and Alliott Patent No. 1,728,343 has not been infringed by defendants. The three claims of the Hatfield and Alliott Patent No. 1,728,343 are invalid as anticipated and involving no invention over the prior art."

Accordingly the bill of complaint was dismissed for want of equity.

Continuous cyclic processes in systems for dry cleaning were in well known operation in the prior art. Traube, 1,291,266, January 14, 1919; Messer, 1,271,599, July 9, 1918; Smith & Luke, 1,385,724, July 26,

The steps in the process are seen to be (1) a washer containing a dry-cleaning solvent and a diatomaceous earth filter aid; (2) the withdrawal from the washer of the soiled solvent; (3) filtration; (4) return of the filtered solvent to the washer in a continuous process. The agitator tank or its equivalent in the patents in suit is absent. Appellant contends that the oscillation of the washer in the Enterprise Cleaning Company's process discharges this same function; but that operation takes place in

1921. The two latter patents were not in reference when the applications of the patent in suit were pending in the Patent Office. It appears from testimony that if one were to introduce a filter aid into the solution used in the Smith and Luke process, the Fenton process would result. In other words, the Smith and Luke patent taught everything claimed in the Fenton patent except the use of a filter aid. Likewise, the Fenton application, which was prior in time to that of Hatfield, taught everything in

the latter, except, as Hatfield admits, the selection of the porous cellular silica as a filter aid. The Hatfield and Alliott patent added only a specified type of dry-cleaning soap which appellees are found neither to recommend nor use. The use of soap, such as that employed by the Enterprise Cleaning Company is old in continuous cyclic processes. Messer, and Smith & Luke patents, supra.

Again, filter aids were well known in the prior analogous arts. This is admitted by Hatfield, who says that he takes no credit for the invention of the filter aid he used. He simply made a selection of a filter aid which was known and which he thought would be more satisfactory than the fuller's earth named by Fenton in his specification, which also specifically recommends other materials acting in a similar manner. Hatfield, in his specification, says that a preferred type of filter aid is described in British patents identified by numbers, and "hereinbefore mentioned," referring presumably to the "finely divided porous cellular silica" previously specified. In publications antedating the Fenton application filter aids were exhaustively discussed and defined as "substances that facilitate the removal of suspended matter in filtration processes." Among them, "Filter-cel" is specified as "made from a porous and cellular silicious mineral found in California." This would seem to fit the filter aid prescribed by Hatfield. Filter-cel, Super-cel, and Hyflo-Supercel, are all diatomaceous earths of different degrees of porosity and have been widely known and used as aids to filtration.

"In determining whether device covered by patent involves patentable invention or merely exercise of ordinary mechanical skill, patentee is conclusively presumed to be thoroughly familiar with existing state of the art," and "the transfer of a device from one art to another does not amount to invention, where it performs the same function in both, without any change in form to adapt it to the new use." Fezzey v. Bemis Bro. Bag Co. (C.C.A.8) 1 F. (2d) 116, 117; Torrey v. Hancock (C.C.A. 8) 184 F. 61. These principles are as applicable to a process as to an apparatus patent.

"The mere use of known equivalents for some of the elements of prior structures; the substitution for one material of another known to possess the same qualities, though not in the same degree, and the mere carrying forward or more extended application of the original idea, involving a change only in form, proportions, or degree, and resulting in the doing of the same work in the same way and by substantially the same means, are not patentable, even though better results are secured." Sloan Filter Co. v. Portland Gold Mining Co. (C.C.A.) 139 F. 23; Western Willite Co. v. Trinidad Asphalt Mfg. Co. (C.C.A.8) 16 F.(2d) 446.

The Fenton patent was not before the Examiner of the Hatfield application as a reference. For this reason the presumption attending the issue of the latter patent is further weakened. Elliott & Co. v. Youngstown Car Mfg. Co. (C.C.A.3) 181 F. 345, 349; Fezzey v. Bemis Bro. Bag Co. (C.C.A.8) 1 F.(2d) 116, 117. We concur in the conclusion of the trial court that the Hatfield patent and the Hatfield and Alliott patent have not been infringed by appellees, and that all the claims in suit of both patents are invalid as anticipated and involving no invention over the prior art. We are further of opinion that, as found by the trial court, if these claims of the Fenton patent are construed so broadly as to cover the processes used by the appellee Cleaner Company, or recommended by the intervener Filtration Products Company, they likewise are invalid as not involving invention over the prior art. The intervener has recommended to this coappellee to be added in the washer, as filter aids, "Hyflo-Supercel," which is a diatomaceous earth, and hexalin, which is an alcohol; and Enterprise Cleaning Company has used, at times, in addition to these, "Morgan Sweetener," which is fuller's earth. In no case have these filter aids been added in any step of the process except in the washer. Furthermore, as found by the trial court: "Between May, 1921, and July 11, 1921, United Filters Company installed at the plant of Unique Cleaners & Dyers at Chicago, Illinois, a Sweetland filter, and a commercial demonstration of cleaning clothes was made in which the cleaning fluid was withdrawn from the washer, passed through the filter, and returned to the washer, and a filter aid known as 'Super-Cel,' which is a diatomaceous earth, was added to the washer. This process was used commercially for cleaning clothes for a period of about three or four weeks. At the time of this demonstration, Fuller's earth, instead of 'Filter-Cel,' was also used in the washer with the cleaning fluid, but on account of plugging up the filter, Fuller's earth was

717

not used to any material extent. This demonstration was not a secret one."

This constituted a public prior use of the process used by the appellee cleaning company which is charged with infringement.

Finally, we think the claims of appellant are foreclosed by the same principle Fenton invoked to procure the allowance of claims 1 and 11 of the patent in suit over the rejection by the Examiner. Conceding that the Traube process had four steps, and insisting that his process had five, Fenton contended that a process which has four steps is not a proper anticipation of one which has five. On appeal, as we have seen, the board sustained him on the ground that the Traube specification contained no reference to a possible agitation or agitation means, "an important step of appellant's process." Here the situation is transposed. The step that is absent from the alleged infringing process is this same agitating tank or its equivalent. It is a familiar principle in patent law that what will not anticipate will not infringe.

Where a feature is described in the specification and declared to be an essential feature of the invention, and made an element in the claims, the patentee (or assignee) "is not now at liberty to say that it is immaterial, or that a device which dispenses with it is an infringement, though it accomplish the same purpose in, perhaps, an equally effective manner." Wright v. Yuengling, 155 U.S. 47, 52, 15 S.Ct. 1, 3, 39 L.Ed. 64.

It may be, as claimed, that appellant's processes accomplish even a better result than that of the defendant cleaning company. If so, that should be its sufficient appeal to patronage. It follows that the decree of the District Court is in all things affirmed.