798

**A. E. STALEY MANUFACTURING COM-
PANY, a corporation, Plaintiff,**

v.

**OLD ROCK DISTILLING CO., Inc., a cor-
poration, and Martin R. Doane,
Defendants.**

**No. 1612.**

United States District Court
W. D. Missouri,
Southwestern Division.

Nov. 27, 1963.

Scofield, Kokjer, Scofield & Lowe,
Kansas City, Mo., Greist, Lockwood,
Greenwalt & Dewey, Chicago, Ill., for
plaintiff.

Haight, Simmons & Hofeldt, Chicago,
Ill., Spencer, Scott & Dwyer, Joplin, Mo.,
for defendants.

GIBSON, Chief Judge.

This is an action for patent infringe-
ment. Jurisdiction is based on the action
having arisen under the patent laws of

the United States. Plaintiff's amended complaint alleges that its reissue patent # 25,337, issued February 26, 1963, and its former patent # 2,912,331 which was surrendered on the issuance of the reissue patent are being infringed by defendant's production of a dry, free flowing molasses feed product.

Plaintiff's patents prescribe a method whereby a hydrophyllic and hygroscopic feed ingredient, that is a feed ingredient having a marked affinity for absorbing and retaining moisture, in the present case the feed ingredient is molasses, is absorbed by a carrier and is dried to obtain a free flowing dried molasses feed product. In plaintiff's patent the carrier specified is soybean millfeed, and in the employment of the soybean millfeed lies the alleged novelty of the product.

In plaintiff's process, soybean millfeed, which is essentially soybean hulls, is moistened and is then impregnated with molasses which is applied at a raised temperature. After the impregnation, the material is dried and cooled, then is ground to finer size and bagged for sale. Under plaintiff's patent both the process and the final product are patented.

Plaintiff contends that defendant is now manufacturing a free flowing dried molasses feed product, using soybean millfeed as a carrier, and that it employs a process substantially the same as that covered by plaintiff's patent. Plaintiff specifically claims infringement of claims 7, 11, 13, 19, and 20 by defendant. Claim 7 is a product claim which claims, "A dried, free flowing feed product formed from discrete particles of a soybean millfeed carrier impregnated with a substantial quantity of highly hydrophyllic and hygroscopic feed ingredients." Claim 19 is also a product claim which claims "A dried, free flowing feed product formed from one part by weight of soybean millfeed carrier impregnated with the solids residue of at least about two parts by weight of molasses, said molasses solids residue being substantially contained within said particles of soybean millfeed carrier." Claims 11, 13, and 20 are method claims which claim

"11. The process of forming a dried, free flowing feed material which comprises, dampening soybean millfeed formed primarily from soybean hulls, impregnating said millfeed with a hydrophyllic and hygroscopic feed ingredient, and, thereafter, drying the same." Claim 13 is the same as claim 11 except that the method claimed in 13 includes impregnation at an elevated temperature. Claim 20 claims "The process of forming a dried, free flowing feed material which comprises, impregnating a carrier composed essentially of soybean millfeed with molasses by mixing one part by weight of said millfeed with at least two parts by weight of said molasses in the presence of added water to increase the penetration of the molasses, and, thereafter drying the same." Claims 19 and 20 were not made in the original patent, but were added in the reissue patent.

The situation out of which the alleged infringement arose came about in 1956 when plaintiff contracted with defendant for defendant to produce a dried molasses product using soybean millfeed as a carrier for plaintiff on a toll basis. Prior to 1956 plaintiff had on hand a large supply of millfeed and in fact the millfeed was then a glut on the market. In 1955, Turner and Wright, employees of the plaintiff, found that the millfeed could be used as a carrier for molasses and Staley decided to sell the product commercially. At the time, Staley had no manufacturing facilities so they contracted with Old Rock which had been manufacturing a molasses feed product using corn oil meal as a carrier since 1954. Defendant manufactured the molasses feed product using soybean millfeed for the plaintiff up until 1959, when plaintiff obtained its patent. Up until that time defendant had manufactured the product for Staley who sold it under the name of Sweetone, and had also manufactured and sold the product under its own label. After it obtained the patent Staley informed defendant that defendant would have to stop making the product, since it constituted an infringement

of plaintiff's patent, and that plaintiff had completed its own production facility and would supply its own needs for Sweetone. Defendant has refused to cease manufacturing and selling the product and plaintiff now prays that defendant be enjoined from manufacturing and selling the product in question and further asks that plaintiff be awarded damages and attorneys' fees as well as the costs of the suit.

Defendant contends that plaintiff's patent is invalid on the basis that the process claimed in plaintiff's patent was already in use at least one year prior to the invention by plaintiff, and that the dried free flowing molasses feed product utilizing soybean millfeed was also in use at least one year prior to plaintiff's invention. Defendant also denies infringement of the process, and further contends that the beneficial use of soybean millfeed as a carrier was obvious to anyone skilled in the art, and that in the present case the employment of soybean millfeed as a carrier was only the substitution of one known ingredient for another to obtain the same result obtained by using other carriers for the molasses. Defendant counterclaims charging misuse of the patent by plaintiff and bad faith. Defendant also seeks injunctive relief against further suits and prays for costs and attorneys' fees.

It is not disputed by either party that molasses has long been recognized as a particularly good livestock food product. Nor is it disputed that since 1940 dried free flowing molasses feed products have been in use which employed other materials than soybean millfeed as carriers or that since 1954 soybean millfeed has been used as a carrier for fish solubles. Defendant contends that these prior uses of molasses and soybean millfeed presaged the "invention" so that it would be obvious to anyone skilled in the art. The uses on which defendant relies are the use by Vy-Lactos Laboratories, a company engaged in the animal feed business in Des Moines, Iowa, of corn oil meal as a carrier for molasses with such use

dating back to 1940, and the subsequent substitution of soybean mill feed in that product, Omalass, with the percentage of substitution being up to 16 per cent soybean millfeed. Since 1956 defendant contends that Vy-Lactos has employed soybean millfeed as the exclusive carrier for molasses in its product known as Scotch-O-Lass, and that in 1954–1955 a Lawrence R. Kees contracted with New Century Co. to make for sale a dried free flowing feed product using soybean millfeed as the carrier for condensed fish solubles. This product was produced and sold to the public. Defendant also manufactured a dry free flowing molasses feed product more than one year prior to plaintiff's application for letters patent on January 7, 1957. Defendant's product was called Hi-Molass and utilized corn oil meal as the carrier.

Defendant also contends that the process claimed by plaintiff is essentially the same as that taught by patent # 2,197,319 issued in 1940 to Earl Sargent, one of the owners of Vy-Lactos Laboratories, and used by defendant Old Rock and by Vy-Lactos in the production of their dried free flowing molasses products. It is defendant's position that the Sargent patent also teaches that soybean millfeed is capable of being employed as a carrier for molasses in place of corn oil meal which was the carrier used by Sargent. The language relied upon by defendant is found in column 4, line 15 of the Sargent patent and reads "As a substitute for the corn oil cake meal, similar results are obtained by the use of the residual product from the extraction of flax oil, soy beans, peat, finely divided cane stalks, etc." Also cited by defendant is an article by T. R. Naffziger and M. I. Mahon, published in 1953 in "Agriculture and Food Chemistry" entitled "Feed Evaluation-Determination of Absorptive Capacity and Fibrous Material of Pith and Certain Feed Constituents," which reported that soybean screenings had a high absorption capacity when tested with distilled water. On the basis of this it is contended by defendant

that the article teaches the use of soybean millfeed as a carrier in dried molasses feeds.

Plaintiff counters defendant's contentions with the arguments that first it evidently was not obvious to employ soybean millfeed as a carrier since no one else was using it for that purpose, and that the employment of soybean millfeed was not taught by the Sargent patent, the Naffziger article or by the use of soybean millfeed as a carrier for fish solubles. Plaintiff posits this argument on the mention in the Sargent patent of "* * * the residual product from the extraction of flax oil, soy beans, * * *" by interpreting the residual product from the extraction of soybeans to mean the soybeans themselves, the plants, or soybean oil meal, but not to include soybean hulls as a separate ingredient. In countering defendant's argument that the Naffziger article teaches the use of soybean millfeed as a carrier for molasses the plaintiff asserts that the article merely indicates that soybean millfeed is highly absorbent to distilled water, but does not indicate that the millfeed would function as a desirable carrier for molasses. As to defendant's argument that the use of soybean millfeed is taught by the utilization of soybean millfeed as a carrier for fish solubles, plaintiff asserts that condensed fish solubles are not highly hydrophyllic and hygroscopic as is molasses. Evidently plaintiff does not mean to imply that fish solubles are not hydrophyllic and hygroscopic, but maintains that molasses is more highly so in that molasses when dried is deliquescent. Plaintiff also argues in response to defendant's argument of the use by Vy-Lactos of soybean millfeed in its Omalass product, that such use was undisclosed and was of such a minor nature that it was not a substantial use.

The Court is of the opinion that looking at the record and the briefs in the case that there has been no infringement. Looking first at the claims of plaintiff which relate to its process, Claims 11 and 13 both claim a method in which the soybean millfeed is moistened and then the molasses is added to impregnate the millfeed. Under defendant's process there is no premoistening of the millfeed, rather the water is added to the molasses and then the millfeed and molasses and water mixture is mixed together to obtain the impregnated product. Plaintiff would contend that defendant's process infringes by equivalency, but in view of the fact that defendant had been employing the same process since 1954 in the production of its corn oil meal and molasses feed product, it is apparent that if the processes are equivalents then the patent on plaintiff's process could not stand as it would have been in use by defendant some three years prior to plaintiff's application. The Court is, therefore, of the opinion that there was no infringement of Claims 11 and 13, but does not make a determination of validity as to those claims. Claim 20 seems clearly to be invalid for the reason that the process described in that claim is the same as defendant's process which was in use by defendant some three years prior to plaintiff's application for a patent and which had been in use by other manufacturers of dried free flowing molasses feed products since the 1940s.

The Court also finds that there was no infringement by defendant of Claims 7 and 19, which are product claims, for the reason that the prior art anticipated plaintiff's use. As previously set out, supra, molasses had long been known as feed ingredient and had been used in combination with various carriers in dried free flowing food products. Vy-Lactos had employed corn oil meal as a carrier and had used soybean millfeed as a carrier in mixtures with its corn oil meal. Kees had used soybean millfeed as a carrier for condensed fish solubles, which while not as highly hydrophyllic and hygroscopic as molasses, was sufficiently so as to indicate the suitability of soybean millfeed as a carrier for molasses. It, therefore, appears to the Court that at the time of plaintiff's alleged invention that soybean millfeed was a known finely divided grain product suit-

able for use as a carrier for molasses, and that, therefore, plaintiff's alleged invention involved nothing more than a substitution of one known ingredient for another in a known combination to perform the same function and to produce the same result. As such, the new product is not a patentable item. Evr-Kleen Seat Pad Co. v. Firestone Tire and Rubber Co., 118 F.2d 600 (8th Cir. 1941), Butler Manufacturing Co. v. Enterprise Cleaning Co., Inc., 81 F.2d 711 (8th Cir. 1936).

■ It would also appear that the use by Vy-Lactos of soybean millfeed as a carrier for molasses in its Omalass product in a percentage of 16 per cent would constitute a prior public use of soybean millfeed as a carrier for molasses and would eliminate any possibility of patentability for a dried free flowing molasses feed product utilizing soybean millfeed as a carrier. Although plaintiff contends that this was not a public use the Court does not agree since there was no evidence of any attempt to maintain the use of soybean millfeed as a secret, and there is no dispute that the product was sold commercially. As was stated in Paraffine Companies v. McEverlast, Inc., 84 F.2d 335, 340 (9th Cir. 1936), "If the purpose of the prior use is chiefly experimental, such use will not defeat the subsequent patent, even though the use is long continued and viewed by the public. But, if the device is used in the regular course of production or commerce, and is not concealed from the public, it will invalidate the subsequent patent." There was no showing that the Vy-Lactos use was experimental, and therefore Claims 7 and 19 are invalid.

Further buttressing the finding that Claims 7 and 19 are invalid is the Sargent patent. In that patent on corn oil meal as a carrier for molasses the patent spoke of the residual product of the extraction of soybeans as a substitute for corn oil meal. It appears to the Court that the residual product of the extraction would have to be soybean hulls and would not be soybean oil meal which would be the residuum of the extraction of soybean oil from soybeans.

In regard to the Naffziger article, the Court is of the opinion that the article would indicate that soybean millfeed could be used to advantage as a carrier for molasses, but the Court does not find it necessary to rule on that point in view of the findings of non-infringement of other grounds.

■■ Defendant's counterclaim for damages from plaintiff's misuse of its patent is not well founded. A patent is presumed to be valid, and the Court finds nothing in the record which would indicate that plaintiff's actions in notifying other manufacturers that it intended to proceed with infringement actions if the other manufacturers did not cease producing a product covered by plaintiff's patent was unreasonable or in bad faith. The burden of proof is on the counterclaimant and the Court is of the opinion that the burden of proof has not been met.

From the record and from the briefs and evidence of the parties the Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court finds:

1. That defendant had been using the same process in the manufacture of its dried molasses feed product using corn oil meal as a carrier since 1954 as it used in the manufacture of its dried molasses feed product which employed soybean millfeed as a carrier, and that defendant's process is essentially that described in the Sargent patent and used by Vy-Lactos since 1940.

2. That plaintiff's Claim 20 is not a valid claim for the reason that the process described in the claim was in use more that one year prior to plaintiff's application for letters patent, and further that Claims 11 and 13, assuming arguendo that they are valid without deciding that issue, are not infringed by defendant since defendant's process does not involve

the premoistening of the soybean mill-feed.

3. That Vy-Lactos Laboratories had employed soybean millfeed as a carrier for molasses in its commercially marketed dried molasses feed product Omalass with the percentage of millfeed running up to 16 per cent, and that soybean millfeed had been used as the exclusive carrier for condensed fish solubles, a hydrophyllic and hygroscopic feed ingredient, and that both the use of millfeed in Omalass and the use as a carrier for fish solubles were public uses and took place more than one year prior to plaintiff's application for letters patent. The Court further finds that, although condensed fish solubles are not as highly hydrophyllic and hygroscopic as molasses, the difference in degree is so slight that the use of soybean millfeed as a carrier for fish solubles would show the suitability of millfeed as a carrier for highly hydrophyllic and hygroscopic feed ingredients and would negative any novelty in the employment of soybean millfeed as a carrier for molasses.

4. That the residual product from the extraction of soybeans mentioned in the Sargent patent is soybean hulls and does not include soybean oil meal or the soybean plant.

5. That plaintiff's Claims 7 and 19 relating to the product are not valid for the reason that the product was anticipated by prior art, and that the product involved only a substitution of one known ingredient for another to achieve a similar result, and that the substitution should have been obvious to anyone skilled in the art.

6. That upon the issuance of the patent the plaintiff was entitled to notify other manufacturers that it had obtained a patent on the employment of soybean millfeed as a carrier for molasses, and was entitled to inform these other manufacturers that they were infringing plaintiff's patent which was prima facie valid. The Court therefore finds no misuse of the patent on plaintiff's part nor any bad faith in its communicating to others the fact that it had a patent and intended to use it.

7. That defendant has sustained its burden of proof on the issue of invalidity of Claims 7, 19, and 20.

8. That defendant has sustained its burden of proof on the issue of non-infringement of Claims 11 and 13, although the Court does not decide the validity of those claims.

9. That defendant has not sustained its burden of proof to defendant's counterclaim for misuse.

10. That defendant has not infringed Reissue Patent #25,337, and that defendant is entitled to costs of the suit, but since there has been no showing of misuse, no attorneys' fees will be awarded.

Judgment accordingly. Judgment will be settled before the Clerk on the usual notice.