STAN TOGUT CORP. et al.,
Plaintiffs,

v.

The HOBART MANUFACTURING
COMPANY, Defendant.

No. 73 Civ. 1655.

United States District Court,
S. D. New York.

Oct. 22, 1974.

**1324**

Hammond & Schreiber, New York City by Dale A. Schreiber, New York City, of counsel, for plaintiffs.

Thompson, Hine and Elory, Cleveland, Ohio by William H. Wallace, Cleveland, Ohio, of counsel, for defendant.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

Plaintiffs, Stan Togut Corporation, Lawrence Togut, and L. E. Togut, Inc. (the Toguts), seek summary judgment in this antitrust action on the issue of liability, pursuant to Rules 56(a) and 56(c), Federal Rules of Civil Procedure, against the defendant, the Hobart Manufacturing Company (Hobart). Plaintiffs allege that the standard form "Sales Agency Franchise Agreement" of defendant Hobart contains territorial, customer and price restrictions which, separately and collectively, constitute *per se* violations of Section 1 of the Sherman Act, 26 Stat. 209, as amended, 15 U.S.C. § 1.

In the event the motion for summary judgment is denied, plaintiffs also seek an order pursuant to Rule 56(d), F.R.C. P., specifying those facts on the issue of liability that appear without substantial controversy.

For reasons stated herein, plaintiffs' motion for summary judgment must be denied. The Toguts have not satisfied the burden under Rule 56(c) of showing through pleadings, depositions, interrogatories, admissions on affidavits, that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Furthermore, the court does not feel that it is practicable at this time to specify facts which appear without substantial controversy pursuant to Rule 56(d). Rather, this case will be referred to a Magistrate so that the parties, in accordance with the discussion to follow, can work out a pre-trial order to narrow and define the issues and undisputed facts and statistics.

### I. *Background*

This antitrust action marks the termination of a relationship between the parties which dates back many years. Defendant Hobart manufactures and sells food equipment for use in supermarkets, commercial kitchens, restaurants, and other establishments where food is sold or prepared. The company also sells appliances for use in the home.

Plaintiff, Stan Togut Corp., was Hobart's sales agent for Queens, New York, from October 1, 1962 to February 28, 1973, under a written agreement entitled "Sales Agency Franchise Agreement" (SAFA). Plaintiff, Lawrence E. Togut, was Hobart's sales agent in Brooklyn, New York, from 1950 until April 26, 1973, pursuant to the same basic form of franchise agreement. Lawrence Togut conducted his business as a sales agent under plaintiff, L. E. Togut, Inc., a New York corporation.

Plaintiffs allege that Hobart's SAFA and Hobart's pricing policy constitutes *per se* violations of § 1 of the Sherman Act. Specifically, they claim in this summary judgment motion that Hobart subjected them to (1) territorial restrictions on the sale of all Hobart equipment; (2) customer restrictions on the sale of all Hobart equipment; and (3) price fixing on the sale of new Hobart equipment. Plaintiffs rely primarily on Hobart's SAFA and Sales Manual to show the *per se* violations. Section B(2) of the SAFA requires the sales agent:

"not to solicit sales of any new or used machines outside the territory granted to you, but should a prospective purchaser call upon and purchase through you, a machine for use outside your territory, or should the Sales Agent or Salesman of another territory effect a sale for use in your

territory under the conditions described, the Company will determine on an equitable basis the compensation to be allowed to you and the other Agent involved, which determination shall be final."

Section A(2) of the SAFA binds Hobart to pay a commission on all sales made in the agent's territory, except sales to the following:

"the Federal Government; any State or Municipal Government; for Export; Syndicate or Chain Store interests; the Kitchen Supply Trade or through such outlet; Households; or others unusual to the Company's common practice. However, the Company, at its option, may grant [the Agent] special commission on sales made to the foregoing which you may have originated and closed or materially assisted in closing."

As to the price-fixing allegation, Hobart admits that it sets the prices on the sales of its new equipment, but it claims that this arrangement is perfectly valid since the company is merely pricing its own product for sale through its own agents. Indeed, the core of Hobart's defense to all the antitrust allegations is that its practices are legitimate because of the agency status of the person to whom the restrictions apply.

## II. *Discussion*

■■ In order to prevail on a motion for summary judgment, the moving party must clearly show (1) that there is no genuine issue as to any material fact in the case; and (2) that he is entitled to a judgment in his favor as a matter of law. Summary judgment is never appropriate where there is a bona fide dispute as to material facts between the parties.

■ In this case, the Toguts have failed to establish that there are no material issues of fact as to the central problem in this litigation—whether the Hobart agency relationship succeeds in avoiding the Sherman Act's proscription

of vertical price fixing arrangements. This question of agency will be determinative of the price-fixing allegation and is crucial in deciding whether *per se* violations have occurred because of territorial and customer restrictions.

## A. *Price-Fixing*

■ There can be no question that the 1926 decision in *United States v. General Electric Company*, 272 U.S. 476, 47 S.Ct. 192, 71 L.Ed. 362, insofar as it held that price fixing pursuant to genuine contracts of agency under private contract law did not violate the Sherman Act, has been in effect overruled. See, *Simpson v. Union Oil Co.* (1964) 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98; *United States v. General Electric Company* (S.D.N.Y.1973) 358 F.Supp. 731. Thus, although Hobart's standard form Franchise Agreement has been cast substantially in the form of a consignment agreement between Hobart and its sales agent, this by no means immunizes Hobart from a charge of violating Section 1. A consignment, no matter how lawful it might be as a matter of private contract law, is not allowed to be used as a cloak to avoid the Sherman Act's proscription of both vertical and horizontal price-fixing arrangements. *Simpson v. Union Oil Co., supra*, 377 U.S. 13, 84 S.Ct. 1051.

■ In order to decide whether Hobart's consignment arrangement violates Section 1, it is necessary to determine whether the manufacturer retains title, dominion, and risk with respect to the product, and whether the position and function of the dealer—in this case the Toguts—are, in fact, indistinguishable from those of an agent or salesman of the manufacturer. See, *Simpson v. Union Oil Co., supra*, 377 U.S. 13, 84 S.Ct. 1051; *United States v. Arnold, Schwinn & Co.* (1967) 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249.

This is the very issue upon which there is a material dispute between the parties. The Toguts claim that they are independent businessmen who bear the

risk of loss on sales of new Hobart equipment a) from nonpayment by the ultimate purchaser of time installment purchases; b) from price competition; c) from a compulsory interest-free investment in Hobart equal to 25% of all outstanding accounts receivable; and d) from loss of, or injury to, so-called consigned inventory. Hobart, on the other hand, strenuously disputes the Toguts' risk of loss contentions, maintaining that the company bears the entire risk. Hobart also claims that it never relinquishes legal title to the goods, and in most cases, that it ships the product directly to the customer. It is apparent that these questions cannot be settled without a full hearing.

In addition to determining whether the Toguts are "independent businessmen," having "all or most of the indicia of entrepreneurs except for price-fixing," *Simpson v. Union Oil Co., supra,* 377 U.S. 13, 84 S.Ct. 1051, the validity of the agency relationship, and thus the price-fixing arrangement, will also depend on the scope of the Hobart distribution system and the number of retail outlets involved. As the Supreme Court noted in *Simpson*:

> "[A]n owner of an article may send it to a dealer who may in turn undertake to sell it only at a price determined by the owner. There is nothing illegal about that arrangement. When, however, a 'consignment' device is used to cover a vast gasoline distribution system, fixing prices through many retail outlets, the antitrust laws prevent calling the 'consignment' an agency, for then the end result of *United States v. Socony Vacuum Oil Co.* [(1940) 310 U.S. 150, 60 S.Ct. 811, 94 L.Ed. 1129] would be avoided by clever manipulation of words, not by differences in substance."

*Simpson v. Union Oil Co., supra,* 377 U.S. at 21–22, 84 S.Ct. at 1057. More information, specifically directed to this point, will be necessary before a determination of the price-fixing charge can be made.

### B. *Customer and Territorial Restrictions*

The outcome of the Toguts' claims of *per se* violations because of customer and territorial restrictions is dependent to a large extent on the finding of whether there is an illegal price-fixing relationship. As the Supreme Court made clear in *United States v. Arnold, Schwinn & Co., supra,* 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249, if there were a finding that customer and territorial restrictions were part of a scheme involving unlawful price-fixing, the territorial and customer restrictions would be *per se* violations of the Sherman Act. In the absence of illegal price-fixing, however, vertically imposed distribution restraints are not necessarily *per se* violations of the Sherman Act.

> "Where the manufacturer retains title, dominion, and risk with respect to the product and the position and function of the dealer in question are, in fact, indistinguishable from those of an agent or salesman of the manufacturer, it is only if the impact of the confinement is 'unreasonably' restrictive of competition that a violation of § 1 results from such confinement, unencumbered by culpable price fixing. *Simpson v. Union Oil Co.,* 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964)"

*United States v. Arnold, Schwinn & Co., supra,* 388 U.S. at 380, 87 S.Ct. at 1866.

At this stage of the proceedings, it is impossible to determine whether Hobart's restrictions are "unreasonably" restrictive of competition. Much more information about competition in the industry will be necessary for such a determination. Furthermore, a question of fact has been raised on whether Hobart has been "firm and resolute" in insisting on compliance with the restrictive clauses. The mere existence of such contractual clauses does not constitute a *per se* violation. *Janel Sales Corp. v. Lanvin Parfums, Inc.* (2d Cir. 1968) 396 F.2d 398, *cert. denied,* 393 U.S. 938, 89

S.Ct. 303, 21 L.Ed.2d 275. The court must view the alleged violations in the context of the entire relationship between the parties.

In summary, plaintiffs' motion for summary judgment, and, in the alternative, for relief pursuant to Rule 56(d) is denied. The case will be referred to Magistrate Hartenstine to supervise pre-trial proceedings and, ultimately, to fashion a pre-trial order defining and narrowing the issues of law and fact involved.

It is so ordered.