DUNHAM–BUSH, INC., Plaintiff,

v.

James MILLS et al., Defendants.

No. 75 Civ. 6237.

United States District Court,
S. D. New York.

July 29, 1976.

---

Proskauer, Rose, Goetz & Mendelsohn, New York City, Sughrue, Rothwell, Mion, Zinn & Macpeak, Washington, D. C., for plaintiff; Jacob Imberman, Steven S. Miller, New York City, Donald E. Zinn, Neil Siegel, Washington, D. C., of counsel.

Stroock & Stroock & Lavan, New York City, for defendants; Robert P. Stein, James K. Silberman, Steven B. Pokotilow, Blum, Moscovitz, Friedman & Kaplan, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Dunham-Bush, Inc. ("Dunham-Bush"), a manufacturer and seller of low pressure steam heating equipment under the registered trademark "Vari-Vac," commenced this action upon claims of breach of contract, unfair competition, tortious interference with business relationships and patent infringement, alleging that the defendants conspired to manufacture and sell a copy of Dunham-Bush's "Vari-Vac" heating system. The defendants are James Mills, D.M.A. Sales, Inc. ("DMA") (headed by Mills), James Perris and The J. Perris Company, Inc. ("Perris Company") (headed by Perris). They move for summary judgment dismissing the action in its entirety upon the theory that Dunham-Bush comes to court with "unclean hands" and has engaged in inequitable conduct with respect to matters at issue. Their contention centers principally about two letters sent by Dunham-Bush to the Yonkers Municipal Housing Authority ("Housing Authority"), a potential customer of Perris Company, which they assert indisputably establish that Dunham-Bush committed acts of patent misuse that makes it unnecessary to reach the infringement issue. For the reasons indicated hereafter, the motion is denied.

## I. THE DEFENDANTS' PRIOR RELATIONSHIP TO PLAINTIFF.

Mills, for more than ten years prior to August 1971, was employed by Pence & Beck, Inc. ("Pence & Beck"), Dunham-Bush's sales representative for the New York and northern New Jersey areas. While so employed he organized DMA, and in August 1971 he entered into a written agreement with plaintiff whereby DMA was authorized to act as its sales representative. That agreement was terminated by DMA in October 1975, whereupon DMA ceased to be plaintiff's sales representative.

Perris, for twenty-one years, until March 1969, also was affiliated with Pence & Beck. His duties there included the servicing and repairing of heating control panels and related heating equipment sold by Pence & Beck. Based upon his twenty-seven years of technical background and his experience and affiliation with Pence & Beck, Perris gained an intimate familiarity with the design, construction and operation of the more than twenty heating control panels manufactured by Dunham-Bush. In 1970

Perris organized Perris Company, which thereafter, in addition to its other activities, serviced heating control equipment manufactured by Dunham-Bush and installed in housing projects owned or operated by the New York City Housing Authority.

In October 1975 Perris Company submitted a bid to the Yonkers Housing Authority in response to its "Request for Quotation" for installation of eight heating control panels and related equipment for one of its projects. The specification for the temperature control system read: "The existing temperature control panels, outdoor selectors and control valve pontentiometers are to be removed and replaced with new, as manufactured by Dunham-Bush, Model ERS, or as approved." Dunham-Bush learned of the Perris bid through Pence & Beck. Upon review of the scope of the work set forth in the Housing Authority Request for Quotation, Dunham-Bush counsel determined that the question of patent infringement was present based upon Perris' employment history and his detailed knowledge of the control panels proprietary to Dunham-Bush. Counsel then referred the matter to plaintiff's patent counsel, who concluded that although early Dunham-Bush patents on the "Vari-Vac" system had expired, United States patent Nos. 2,891,218 ('218) and 3,054,562 ('562), also owned by Dunham-Bush, were germane to the Vari-Vac system control panels.

## II. THE LETTERS OF NOVEMBER 5 AND NOVEMBER 19, 1975.

On November 5, 1975, Dunham-Bush sent Perris Company the first of the two letters central to the latter's claim of patent misuse. It stated that "the control panel as described in the specification is covered by one or more valid and existing patents held by Dunham-Bush, Inc.," and that any attempt to install such a panel would meet with a suit for injunctive relief and money damages for infringement. A copy of the letter was sent to the Housing Authority. Perris Company answered that it was unaware of any patents that were applicable to the control panel described in the specifications. In response, on November 19, Dunham-Bush wrote a second letter, with a copy to the Yonkers Housing Authority, which was more precise than the first. It specified that the '218 and '562 patents were "the property of Dunham-Bush, Inc. and are applicable to the control panels described in the specifications." It further stated that any attempt to duplicate the panels, if it occurred, would be an infringement upon those patents and would result in a suit for damages and injunctive relief against all involved. Thereafter, the Housing Authority, while acknowledging that Perris Company was the lowest bidder, understandably refrained from awarding the contract.

Dunham-Bush then commenced this action on December 12, 1975, alleging its various claims against the defendants, but limiting the infringement claim to its '562 patent. It is Dunham-Bush's reliance upon this patent in support of its infringement claim in this action and its omission to include in the suit the '218 patent, also referred to in the letter of November 19, which is at the hard core of defendants' claim of patent misuse.

Pending the award by the Housing Authority of the contract on the Perris bid, there is no direct means to compare the proposed installation with the claims set forth in plaintiff's '562 patent to determine whether its claim of infringement is of substance. The issue, however, under defendants' motion for summary judgment is not infringement of that patent, but, as the parties acknowledge, plaintiff's "good faith" in sending its letters of November 5 and 19 to Perris Company and the Housing Authority.[1] To put the parties' respective

---

1. *Royal Die Cutting & Heat Sealing Corp. v. Duro Pen Co.,* 223 F.Supp. 384, 386 (S.D.N.Y. 1963) ("The factual question of good faith is clearly paramount in these cases"). *See, e. g., Falcon Lock Co. v. Best Universal Lock Co.,*  362 F.2d 221, 223 (9th Cir. 1966); *Hall v. Wright,* 240 F.2d 787, 795–96 (9th Cir. 1957); *Bechik Prods., Inc. v. Flexible Prods., Inc.,* 225 F.2d 603 (2d Cir. 1955); *Kaplan v. Helenhart Novelty Corp.,* 182 F.2d 311, 314 (2d Cir. 1950);

positions on the issue of good faith in perspective, it is necessary to refer to various patents owned by plaintiff, some current and others expired, which cover component parts of plaintiff's "Vari-Vac" heating system.

Plaintiff's Model ERS control panel is covered by United States patent Nos. 2,326,977; 2,431,970; and 2,620,135. These three patents (hereafter "expired patents") have expired, and it is not disputed that the control panels and systems described therein are in the public domain. It is this ERS control panel which was described in the Authority's Request for Quotation.

Plaintiff, as previously noted, is also the owner of United States patent No. 2,891,218, one of the two referred to in its letter of November 19. Plaintiff now admits that '218 does not include claims which cover the Model ERS control panel or the Model RST control panel referred to below.

Model RST, the basis of plaintiff's charge of infringement in this action, is manufactured under its U.S. patent No. 3,054,562. This was the second patent specified in the November 19 letter. Plaintiff also admits that this patent does not include claims which cover the Model ERS control panel.

The defendants' position, simply stated, is that since the Request for Quotation specifies plaintiff's Model ERS, covered by the expired patents, the specifications could be met by systems in the public domain; further, in view of plaintiff's admission that its '562 patent covering its Model RST does not include claims which cover the Model ERS control panel, there was no basis to charge in the letter of November 19 infringement of the '562 patent.

■ The plaintiff contends that this is a simplistic view of the true situation and disregards reality. It says that the RST panel is an advancement and improvement over prior models, the patents on which

have expired; that the RST panel is a replaceable component installed on some Vari-Vac systems, while in others the Model ERS is utilized; that DMA, while still under agreement with plaintiff as its representative, had physical possession and knowledge of technical data relating to the RST panel; and that Perris, with his technical knowledge, skill and intimate familiarity with the design and construction of all heating control panels manufactured by Dunham-Bush, acting in concert with DMA and Mills, participated in a scheme to copy by reverse engineering the design of the RST panel. Thus the clear thrust of plaintiff's contention is that Perris Company intends, upon the award of the contract to it, to include the improved Model RST in the control panel installation. This could be done since the specification for Model ERS also permits systems "or as approved." While there is no direct evidential support for this charge, it is recognized that a conspiracy rarely can be established by direct evidence; rather, it is usually established by the reasonable inferences to be drawn from all the surrounding facts and circumstances.[2]

■ Plaintiff emphasizes that defendants' counsel has not compared the '562 patent to the Housing Authority specifications, nor has he attempted to apply the claims of the '562 patent to the system to be built by Perris Company in order to meet those specifications. Indeed, even at a post-argument conference attended by court and counsel, there was no disclosure by defendants as to how it intended to comply with the terms of the bid. Despite the voluminous affidavits and briefs on this motion, Perris Company has not indicated up to this point that its installation in fulfillment of the bid would be non-infringing. But more important, Perris was intimately familiar with the industry and was admittedly knowledgeable of and had access to

Magnetic Eng. & Mfg. Co. v. Dings Mfg. Co., 178 F.2d 866, 868 (2d Cir. 1950).

2. Cf. United States v. Kahaner, 203 F.Supp. 78, 84 (S.D.N.Y.1962); Morgan v. Sylvester, 125

F.Supp. 380, 389 (S.D.N.Y.1954), aff'd, 220 F.2d 758 (2d Cir.), cert. denied, 350 U.S. 867, 76 S.Ct. 112, 100 L.Ed. 768 (1955).

the design, construction and operation of the Dunham-Bush control patents, including the RST improvement model. Whether or not it was reasonable for plaintiff when it received word of the bid to act upon the belief that Perris would make use of more contemporary technology in designing and constructing the system to be installed under the bid presents an issue of fact as to plaintiff's good faith.

That the letter of November 19 also refers to the '218 patent, which plaintiff now concedes would not be infringed whether defendant supplied the Housing Authority with a Model ERS or a Model RST panel, does not by itself establish plaintiff's bad faith or malicious conduct sufficient to bar enforcement of the '562 patent. While its inclusion is evidential upon the defense of patent misuse, plaintiff's contention that the reference to it was out of an abundance of caution and under an honest but mistaken belief that in fact it also covered the defendants' proposed installation is interlaced generally with the entire fact issue of good faith, particularly since the '218 patent on its face appears to be relevant to the fact situation.[3]

In sum, the issue of good faith is so riven with disputed issues as to the subjective state of mind of plaintiff and the existence of a reasonable cause to suspect infringement[4] that the drastic remedy of summary judgment is foreclosed.[5] Indeed, to grant the motion and deprive plaintiff of a trial on the merits would be no more than "an effort to save time by an improper reversion to 'trial by affidavit,' improper because there is involved an issue of fact, turning on credibility."[6] In the circumstances of this case, demeanor testimony is of critical importance.[7]

Additional factors counsel the denial of the motion for summary judgment. To grant summary judgment would not save time or shorten the trial, since it must be conducted in any event. Apart from plaintiff's other claims based on breach of contract, tortious interference with business relations and unfair competition, defendants have counterclaimed for damages flowing from the November letters. Resolution of the counterclaims alone will require the court to consider whether defendants are infringers. If so, "the simple device of the pot calling the kettle black" will not permit the defendants to avoid accountability for invading plaintiff's rights under its patent.[8] Thus, the issues raised on this motion will remain very much alive even if

---

**3.** Cf. *Deering, Milliken & Co. v. Temp-Resisto Corp.*, 160 F.Supp. 463, 485 n.11 (S.D.N.Y. 1958), *modified on other grounds,* 274 F.2d 626 (2d Cir. 1960); *S. W. Farber, Inc. v. Texas Instr. Inc.*, 230 F.Supp. 883, 891 (D.C.Del.1964), *aff'd,* 344 F.2d 957 (3d Cir.), *cert. denied,* 382 U.S. 843, 86 S.Ct. 82, 15 L.Ed.2d 84 (1965). *Compare Hall v. Wright,* 240 F.2d 787, 795 (9th Cir. 1957).

**4.** *See, e. g., Hall v. Wright,* 240 F.2d 787, 795 (9th Cir. 1957) (notices sent "without cause"); *Kaplan v. Helenhart Novelty Corp.*, 182 F.2d 311, 314 (2d Cir. 1950) ("reasonable belief"); *Brown v. Myerberg,* 314 F.Supp. 939, 943 (S.D. N.Y.1970) (finding "sufficient likelihood of infringement" to justify sending notices); *Technicon Instr. Corp. v. Coleman Instr., Inc.*, 255 F.Supp. 630, 642 (N.D.Ill.1966), *aff'd,* 385 F.2d 391 (7th Cir. 1967) (requiring "probable cause for believing that an act of infringement has occurred"); *A. E. Staley Mfg. Co. v. Old Rock Distilling Co.*, 223 F.Supp. 798, 802 (notification must not be "unreasonable"); *Surgical Supply Serv., Inc. v. Adler,* 206 F.Supp. 564, 571 (E.D.Pa.1962), *rev'd on other grounds,* 321

F.2d 536 (3d Cir. 1963) (patent owner must act "reasonably and in good faith" in sending letters to customers). *Cf. Eastern States Pet. Co. v. Asiatic Pet. Corp.*, 103 F.2d 315 (2d Cir. 1939) (L. Hand, J.) (no slander of plaintiff's title if defendants had "reasonable belief" that they owned products in question).

**5.** *Cf., e. g., Pfizer, Inc. v. International Rectifier Corp.*, 538 F.2d 180, at 185 (8th Cir. 1975); *Gladstone v. Fireman's Fund Ins. Co.*, 536 F.2d 1403, at 1406 (2d Cir. 1976); *Home Ins. Co. v. Aetna Cas. & Sur. Co.*, 528 F.2d 1388 (2d Cir. 1976); *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975).

**6.** *Colby v. Klune,* 178 F.2d 872, 872–73 (2d Cir. 1949).

**7.** *Cf. Dyer v. MacDougall,* 201 F.2d 265 (2d Cir. 1952).

**8.** *Gray Tool Co. v. Humble Oil & Ref. Co.*, 186 F.2d 365, 369–70 (5th Cir.), *cert. denied,* 341 U.S. 934, 71 S.Ct. 854, 95 L.Ed. 1363 (1951).

it is granted, a circumstance which calls for restraint.[9] As has been aptly stated:

"A party charged with infringement should not be permitted too easily to escape trial of the issue by raising a clamor to the effect that the holder of the patent alleged to have been infringed has done something that he should not have done. The public interest will be better served by a full hearing on all the issues involved, before there is any attempt at dismissal in application of the clean hands doctrine, than by dismissal in advance of hearing on the motion of one who comes into court admitting for the purposes of his motion that he himself is guilty of infringement." [10]

## III. PARAGRAPH 4 OF THE DUNHAM–BUSH–DMA CONTRACT.

The defendants also move for summary judgment upon the basis of an allegedly restrictive and illegal provision contained in Dunham-Bush's "Manufacturer's Sales Representative Agreement" entered into with DMA which was terminated in September 1975. Paragraph 4 of the Agreement provided, *inter alia* :

"Nothing herein shall prohibit Sales Representative from selling products of any other concern in [its] territory as long as such products are not competitive with Dunham-Bush's product line, however, in order to better insure that Sales Representative's efforts yield a volume of business commensurate with the reasonable potentialities of said territory, Sales Rep-

resentative must obtain written consent from Dunham-Bush prior to selling products of any other concern."

Defendants contend that the provision is illegal on its face because it is in effect a means by which Dunham-Bush conditions the supply of its patented products upon the representative's pledge not to purchase competing, unpatented products from other manufacturers. This, defendants argue, is an unlawful attempt by Dunham-Bush to extend its patent monopoly and bars not only plaintiff's patent infringement claim but its other "inextricably related" claims as well.

We need not now consider what import to attach to the lack of any immediate connection between the contract and the patent in suit. Similarly, the significance of DMA's failure to indicate that it ever sold or offered for sale the control panels covered by that patent need not be resolved. The same is true for other matters. It is sufficient to note that defendants contend that the contract restriction was unlawful only because it sought to restrain DMA from selling products competitive with the products that DMA *purchased* from Dunham-Bush.[11] However, under the agreement, described as "Manufacturer's Sales Representative Agreement," DMA did not purchase goods from Dunham-Bush. In the main it solicited orders from customers subject to Dunham-Bush's approval. Dunham-Bush would then ship directly to the purchaser, bill the purchaser, and pay DMA a commission on the order. Dunham-Bush retained title, dominion and risk with respect to the goods

9. *See, e. g., Kollsman Instr. Corp. v. Astek Instr. Corp.,* 225 F.Supp. 534, 534–35 (S.D.N.Y. 1964). *Cf. Taylor v. Rederi A/S Volo,* 374 F.2d 545, 549 (3d Cir. 1967).

10. *Westinghouse Elec. Corp. v. Bulldog Elec. Prods. Co.,* 179 F.2d 139, 146 (4th Cir. 1950). *Accord, Silvray Lighting Inc. v. Versen,* 10 F.R.D. 507, 509 (D.N.J.1950). *See also Paul E. Hawkinson Co. v. Dennis,* 166 F.2d 61, 63 (5th Cir. 1948) ("[I]f summary judgment procedure is to be effectively used by an infringer to permit him to continue to infringe without accountability, the case for summary judgment must be made out clearly and beyond the peradventure of a doubt."); *Gray Tool Co. v. Hum-*

*ble Oil & Ref. Co.,* 186 F.2d 365, 366 (5th Cir.), *cert. denied,* 341 U.S. 934, 71 S.Ct. 854, 95 L.Ed. 1363 (1951); *Fluid Sys., Inc. v. Great Lakes Equip. Co.,* 98 F.Supp. 220, 221 (N.D. Ohio 1951); *Burt v. Bilofsky,* 9 F.R.D. 299, 300 (D.N.J.1949).

11. *Cf. United States v. Arnold Schwinn & Co.,* 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967); *Stan Togut Corp. v. Hobart Mfg. Co.,* 398 F.Supp. 1323, 1325–26 (S.D.N.Y.1974); *Fagan v. Sunbeam Lighting Co.,* 303 F.Supp. 356, 359–61 (S.D.Ill.1969); *C.B.S. Bus. Equip. Corp. v. Underwood Corp.,* 240 F.Supp. 413 (S.D.N.Y. 1964).

48

until they were delivered; DMA functioned in most cases as a salesman rather than a wholesaler. When it did purchase goods from Dunham-Bush for its own account, it did so pursuant to Dunham-Bush's "BUY/RESELL" program. Dunham-Bush asserts that this program was conducted separately from its commissioned sales activities—that it selected a number of its representatives, including DMA, who were permitted to purchase a limited variety of specified products such as repair parts and some finished parts. Thus plaintiff alleges that the program was designed for the convenience of its customers who required ready access to such products. It stresses that the BUY/RESELL program was limited in scope, participation in it required independent authorization from Dunham-Bush, and the terms of sale were embodied in a separate document apart from the "Manufacturer's Sales Representative Agreement." Plaintiff avers that the challenged provision was never intended to apply to the BUY/RESELL program and that no restraints of any kind were placed on its sales representatives with respect to goods they purchased directly from Dunham-Bush. Defendants, on the other hand, contend that the restrictions applied to "the entirety of the relationship between Dunham-Bush and D.M.A." A clear fact issue exists, making it unnecessary to consider the parties' various legal contentions. Defendants' motion for summary judgment is therefore denied in all respects.

So ordered.