(Slip Opinion) OCTOBER TERM, 2010 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## MICROSOFT CORP. *v.* I4I LIMITED PARTNERSHIP ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

No. 10–290.  Argued April 18, 2011—Decided June 9, 2011

In asserting patent invalidity as a defense to an infringement action, an alleged infringer must contend with §282 of the Patent Act of 1952 (Act), under which "[a] patent shall be presumed valid" and "[t]he burden of establishing invalidity . . . shall rest on the party asserting" it.  Since 1984, the Federal Circuit has read §282 to require a defendant seeking to overcome the presumption to persuade the factfinder of its invalidity defense by clear and convincing evidence.

Respondents (collectively, i4i) hold the patent at issue, which claims an improved method for editing computer documents.  After i4i sued petitioner Microsoft Corp. for willful infringement of that patent, Microsoft counterclaimed and sought a declaration that the patent was invalid under §102(b)'s on-sale bar, which precludes patent protection for any "invention" that was "on sale in this country" more than one year prior to the filing of a patent application.  The parties agreed that, more than a year before filing its patent application, i4i had sold a software program known as S4 in the United States, but they disagreed over whether that software embodied the invention claimed in i4i's patent.  Relying on the undisputed fact that the S4 software was never presented to the Patent and Trademark Office (PTO) during its examination of the patent application, Microsoft objected to i4i's proposed jury instruction that the invalidity defense must be proved by clear and convincing evidence.  The District Court nevertheless gave that instruction, rejecting Microsoft's alternative instruction proposing a preponderance of the evidence standard.  The jury found that Microsoft willfully infringed the i4i patent and had failed to prove the patent's invalidity.  The Federal Circuit affirmed, relying on its settled interpretation of §282.

Syllabus

*Held:* Section 282 requires an invalidity defense to be proved by clear and convincing evidence. Pp. 5–20.

(a) The Court rejects Microsoft's contention that a defendant need only persuade the jury of a patent invalidity defense by a preponderance of the evidence. Where Congress has prescribed the governing standard of proof, its choice generally controls. *Steadman* v. *SEC*, 450 U. S. 91, 95. Congress has made such a choice here. While §282 includes no express articulation of the standard of proof, where Congress uses a common-law term in a statute, the Court assumes the "term . . . comes with a common law meaning." *Safeco Ins. Co. of America* v. *Burr*, 551 U. S. 47, 58. Here, by stating that a patent is "presumed valid," §282, Congress used a term with a settled common-law meaning. *Radio Corp. of America* v. *Radio Engineering Laboratories, Inc.*, 293 U. S. 1 *(RCA)*, is authoritative. There, tracing nearly a century of case law, the Court stated, *inter alia,* that "there is a presumption of [patent] validity [that is] not to be overthrown except by clear and cogent evidence," *id.*, at 2. Microsoft's contention that the Court's pre-Act precedents applied a clear-and-convincing standard only in two limited circumstances is unavailing, given the absence of those qualifications from the Court's cases. Also unpersuasive is Microsoft's argument that the Federal Circuit's interpretation must fail because it renders superfluous §282's additional statement that "[t]he burden of establishing invalidity . . . shall rest on the party asserting" it. The canon against superfluity assists only where a competing interpretation gives effect " 'to every clause and word of a statute.' " *Duncan* v. *Walker*, 533 U. S. 167, 174. Here, no interpretation of §282 avoids excess language because, under either of Microsoft's alternative theories—that the presumption only allocates the burden of production or that it shifts both the burdens of production and persuasion—the presumption itself would be unnecessary in light of §282's additional statement as to the challenger's burden. Pp. 5–13.

(b) Also rejected is Microsoft's argument that a preponderance standard must at least apply where the evidence before the factfinder was not before the PTO during the examination process. It is true enough that, in these circumstances, "the rationale underlying the presumption—that the PTO, in its expertise, has approved the claim—seems much diminished," *KSR Int'l Co.* v. *Teleflex Inc.*, 550 U. S. 398, 426, though other rationales may still animate the presumption. But the question remains whether Congress has specified the applicable standard of proof. As established here today, Congress did just that by codifying the common-law presumption of patent validity and, implicitly, the heightened standard of proof attached to it. The Court's pre-Act cases never adopted or endorsed Microsoft's fluc-

Syllabus

tuating standard of proof. And they do not indicate, even in dicta, that anything less than a clear-and-convincing standard would ever apply to an invalidity defense. In fact, the Court indicated to the contrary. See *RCA,* 293 U. S., at 8. Finally, the Court often applied the heightened standard of proof without mentioning whether the relevant prior-art evidence had been before the PTO examiner, in circumstances strongly suggesting it had not. See, *e.g., Smith* v. *Hall*, 301 U. S. 216, 227, 233. Nothing in §282's text suggests that Congress meant to depart from that understanding to enact a standard of proof that would rise and fall with the facts of each case. Indeed, had Congress intended to drop the heightened standard of proof where the evidence before the jury varied from that before the PTO, it presumably would have said so expressly. Those pre-Act cases where various Courts of Appeals observed that the presumption is weakened or dissipated where the evidence was never considered by the PTO should be read to reflect the commonsense principle that if the PTO did not have all material facts before it, its considered judgment may lose significant force. Cf. *KSR*, 550 U. S., at 427. Consistent with that principle, a jury may be instructed to evaluate whether the evidence before it is materially new, and if so, to consider that fact when determining whether an invalidity defense has been proved by clear and convincing evidence. Pp. 14–18.

(c) This Court is in no position to judge the comparative force of the parties' policy arguments as to the wisdom of the clear-and-convincing-evidence standard that Congress adopted. Congress specified the applicable standard of proof in 1952 when it codified the common-law presumption of patent validity. During the nearly 30 years that the Federal Circuit has interpreted §282 as the Court does today, Congress has often amended §282 and other patent laws, but apparently has never considered any proposal to lower the standard of proof. Indeed, Congress has left the Federal Circuit's interpretation in place despite ongoing criticism, both from within the Federal Government and without. Accordingly, any recalibration of the standard of proof remains in Congress' hands. Pp. 18–20.

598 F. 3d 831, affirmed.

SOTOMAYOR, J., delivered the opinion of the Court, in which SCALIA, KENNEDY, GINSBURG, BREYER, ALITO, and KAGAN, JJ., joined. BREYER, J., filed a concurring opinion, in which SCALIA and ALITO, JJ., joined. THOMAS, J., filed an opinion concurring in the judgment. ROBERTS, C. J., took no part in the consideration or decision of the case.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 10–290

MICROSOFT CORPORATION, PETITIONER *v.* i4i LIMITED PARTNERSHIP ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

[June 9, 2011]

JUSTICE SOTOMAYOR delivered the opinion of the Court.

Under §282 of the Patent Act of 1952, "[a] patent shall be presumed valid" and "[t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." 35 U. S. C. §282. We consider whether §282 requires an invalidity defense to be proved by clear and convincing evidence. We hold that it does.

## I

### A

Pursuant to its authority under the Patent Clause, U. S. Const., Art. I, §8, cl. 8, Congress has charged the United States Patent and Trademark Office (PTO) with the task of examining patent applications, 35 U. S. C. §2(a)(1), and issuing patents if "it appears that the applicant is entitled to a patent under the law," §131. Congress has set forth the prerequisites for issuance of a patent, which the PTO must evaluate in the examination process. To receive patent protection a claimed invention must, among other things, fall within one of the express categories of patentable subject matter, §101, and be novel, §102, and

nonobvious, §103.  Most relevant here, the on-sale bar of §102(b) precludes patent protection for any "invention" that was "on sale in this country" more than one year prior to the filing of a patent application.  See generally *Pfaff* v. *Wells Electronics, Inc.*, 525 U. S. 55, 67–68 (1998).   In evaluating whether these and other statutory conditions have been met, PTO examiners must make various factual determinations—for instance, the state of the prior art in the field and the nature of the advancement embodied in the invention.  See *Dickinson* v. *Zurko*, 527 U. S. 150, 153 (1999).

Once issued, a patent grants certain exclusive rights to its holder, including the exclusive right to use the invention during the patent's duration.  To enforce that right, a patentee can bring a civil action for infringement if another person "without authority makes, uses, offers to sell, or sells any patented invention, within the United States." §271(a); see also §281.

Among other defenses under §282 of the Patent Act of 1952 (1952 Act), an alleged infringer may assert the invalidity of the patent—that is, he may attempt to prove that the patent never should have issued in the first place.  See §§282(2), (3).  A defendant may argue, for instance, that the claimed invention was obvious at the time and thus that one of the conditions of patentability was lacking. See §282(2); see also §103.  "While the ultimate question of patent validity is one of law," *Graham* v. *John Deere Co. of Kansas City*, 383 U. S. 1, 17 (1966) (citing *Great Atlantic & Pacific Tea Co.* v. *Supermarket Equipment Corp.*, 340 U. S. 147, 155 (1950) (Douglas, J., concurring)); see *post,* at 1 (BREYER, J., concurring), the same factual questions underlying the PTO's original examination of a patent application will also bear on an invalidity defense in an infringement action.  See, *e.g.*, 383 U. S., at 17 (describing the "basic factual inquiries" that form the "background" for evaluating obviousness); *Pfaff*, 525 U. S., at 67–69

(same, as to the on-sale bar).

　　In asserting an invalidity defense, an alleged infringer must contend with the first paragraph of §282, which provides that "[a] patent shall be presumed valid" and "[t]he burden of establishing invalidity . . . rest[s] on the party asserting such invalidity."[1]　Under the Federal Circuit's reading of §282, a defendant seeking to overcome this presumption must persuade the factfinder of its invalidity defense by clear and convincing evidence.　Judge Rich, a principal drafter of the 1952 Act, articulated this view for the court in *American Hoist & Derrick Co.* v. *Sowa & Sons, Inc.*, 725 F. 2d 1350 (CA Fed. 1984).　There, the Federal Circuit held that §282 codified "the existing presumption of validity of patents," *id.*, at 1359 (internal quotation marks omitted)—what, until that point, had been a common-law presumption based on "the basic proposition that a government agency such as the [PTO] was presumed to do its job," *ibid.*　Relying on this Court's pre-1952 precedent as to the "force of the presumption," *ibid.* (citing *Radio Corp. of America* v. *Radio Engineering Laboratories, Inc.*, 293 U. S. 1 (1934) *(RCA)*), Judge Rich concluded:

> "[Section] 282 creates a presumption that a patent is valid and imposes the burden of proving invalidity on the attacker.　That burden is constant and never changes and is to convince the court of invalidity by clear evidence."　725 F. 2d, at 1360.

In the nearly 30 years since *American Hoist*, the Federal Circuit has never wavered in this interpretation of §282. See, *e.g., Greenwood* v. *Hattori Seiko Co.*, 900 F. 2d 238,

––––––––––

[1] As originally enacted in 1952, the first paragraph of §282 read: "A patent shall be presumed valid.　The burden of establishing invalidity of a patent shall rest on a party asserting it."　66 Stat. 812.　Congress has since amended §282, inserting two sentences not relevant here and modifying the language of the second sentence to that in the text.

240–241 (CA Fed. 1990); *Ultra-Tex Surfaces, Inc.* v. *Hill Bros. Chemical Co.*, 204 F. 3d 1360, 1367 (CA Fed. 2000); *ALZA Corp.* v. *Andrx Pharmaceuticals, LLC,* 603 F. 3d 935, 940 (CA Fed. 2010).

B

Respondents i4i Limited Partnership and Infrastructures for Information Inc. (collectively, i4i) hold the patent at issue in this suit. The i4i patent claims an improved method for editing computer documents, which stores a document's content separately from the metacodes associated with the document's structure. In 2007, i4i sued petitioner Microsoft Corporation for willful infringement, claiming that Microsoft's manufacture and sale of certain Microsoft Word products infringed i4i's patent. In addition to denying infringement, Microsoft counterclaimed and sought a declaration that i4i's patent was invalid and unenforceable.

Specifically and as relevant here, Microsoft claimed that the on-sale bar of §102(b) rendered the patent invalid, pointing to i4i's prior sale of a software program known as S4. The parties agreed that, more than one year prior to the filing of the i4i patent application, i4i had sold S4 in the United States. They presented opposing arguments to the jury, however, as to whether that software embodied the invention claimed in i4i's patent. Because the software's source code had been destroyed years before the commencement of this litigation, the factual dispute turned largely on trial testimony by S4's two inventors—also the named inventors on the i4i patent—both of whom testified that S4 did not practice the key invention disclosed in the patent.

Relying on the undisputed fact that the S4 software was never presented to the PTO examiner, Microsoft objected to i4i's proposed instruction that it was required to prove its invalidity defense by clear and convincing evidence.

Instead, "if an instruction on the 'clear and convincing' burden were [to be] given," App. 124a, n. 8, Microsoft requested the following:

> "'Microsoft's burden of proving invalidity and unenforceability is by clear and convincing evidence. However, Microsoft's burden of proof with regard to its defense of invalidity based on prior art that the examiner did not review during the prosecution of the patent-in-suit is by preponderance of the evidence.'" *Ibid.*

Rejecting the hybrid standard of proof that Microsoft advocated, the District Court instructed the jury that "Microsoft has the burden of proving invalidity by clear and convincing evidence." App. to Pet. for Cert. 195a.

The jury found that Microsoft willfully infringed the i4i patent and that Microsoft failed to prove invalidity due to the on-sale bar or otherwise. Denying Microsoft's posttrial motions, the District Court rejected Microsoft's contention that the court improperly instructed the jury on the standard of proof. The Court of Appeals for the Federal Circuit affirmed.[2] 598 F. 3d 831, 848 (2010). Relying on its settled interpretation of §282, the court explained that it could "discern [no] error" in the jury instruction requiring Microsoft to prove its invalidity defense by clear and convincing evidence. *Ibid.* We granted certiorari. 562 U. S. \_\_\_ (2010).

## II

According to Microsoft, a defendant in an infringement action need only persuade the jury of an invalidity defense by a preponderance of the evidence. In the alternative, Microsoft insists that a preponderance standard must

---

[2] Although not relevant here, the Court of Appeals modified the effective date of the permanent injunction that the District Court entered in favor of i4i. 598 F. 3d 831, 863–864 (CA Fed. 2010).

apply at least when an invalidity defense rests on evidence that was never considered by the PTO in the examination process. We reject both contentions.[3]

## A

Where Congress has prescribed the governing standard of proof, its choice controls absent "countervailing constitutional constraints." *Steadman* v. *SEC*, 450 U. S. 91, 95 (1981). The question, then, is whether Congress has made such a choice here.

As stated, the first paragraph of §282 provides that "[a] patent shall be presumed valid" and "[t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." Thus, by its express terms, §282 establishes a presumption of patent validity, and it provides that a challenger must overcome that presumption to prevail on an invalidity defense. But, while the statute explicitly specifies the burden of proof, it includes no express articulation of the standard of proof.[4]

------

[3] i4i contends that Microsoft forfeited the first argument by failing to raise it until its merits brief in this Court. The argument, however, is within the scope of the question presented, and because we reject it on its merits, we need not decide whether it has been preserved.

[4] A preliminary word on terminology is in order. As we have said, "[t]he term 'burden of proof' is one of the 'the slipperiest members of the family of legal terms.'" *Schaffer* v. *Weast*, 546 U. S. 49, 56 (2005) (quoting 2 J. Strong, McCormick on Evidence §342, p. 433 (5th ed. 1999) (alteration omitted)). Historically, the term has encompassed two separate burdens: the "burden of persuasion" (specifying which party loses if the evidence is balanced), as well as the "burden of production" (specifying which party must come forward with evidence at various stages in the litigation). *Ibid.* Adding more confusion, the term "burden of proof" has occasionally been used as a synonym for "standard of proof." *E.g.*, *Grogan* v. *Garner*, 498 U. S. 279, 286 (1991).

Here we use "burden of proof" interchangeably with "burden of persuasion" to identify the party who must persuade the jury in its favor to prevail. We use the term "standard of proof" to refer to the degree of certainty by which the factfinder must be persuaded of a factual conclu-

Our statutory inquiry, however, cannot simply end there. We begin, of course, with "the assumption that the ordinary meaning of the language" chosen by Congress "accurately expresses the legislative purpose." *Engine Mfrs. Assn.* v. *South Coast Air Quality Management Dist.*, 541 U. S. 246, 252 (2004) (internal quotation marks omitted). But where Congress uses a common-law term in a statute, we assume the "term . . . comes with a common law meaning, absent anything pointing another way." *Safeco Ins. Co. of America* v. *Burr*, 551 U. S. 47, 58 (2007) (citing *Beck* v. *Prupis*, 529 U. S. 494, 500–501 (2000)). Here, by stating that a patent is "presumed valid," §282, Congress used a term with a settled meaning in the common law.

Our decision in *RCA,* 293 U. S. 1, is authoritative. There, tracing nearly a century of case law from this Court and others, Justice Cardozo wrote for a unanimous Court that "there is a presumption of validity, a presumption not to be overthrown except by clear and cogent evidence." *Id.*, at 2. Although the "force" of the presumption found "varying expression" in this Court and elsewhere, *id.*, at 7, Justice Cardozo explained, one "common core of thought and truth" unified the decisions:

> "[O]ne otherwise an infringer who assails the validity of a patent fair upon its face bears a heavy burden of persuasion, and fails unless his evidence has more than a dubious preponderance. If that is true where

sion to find in favor of the party bearing the burden of persuasion. See *Addington* v. *Texas*, 441 U. S. 418, 423 (1979). In other words, the term "standard of proof" specifies how difficult it will be for the party bearing the burden of persuasion to convince the jury of the facts in its favor. Various standards of proof are familiar—beyond a reasonable doubt, by clear and convincing evidence, and by a preponderance of the evidence. See generally 21B C. Wright & K. Graham, Federal Practice & Procedure §5122, pp. 405–411 (2d ed. 2005) (hereinafter Fed. Practice) (describing these and other standards of proof).

the assailant connects himself in some way with the title of the true inventor, it is so *a fortiori* where he is a stranger to the invention, without claim of title of his own. If it is true where the assailant launches his attack with evidence different, at least in form, from any theretofore produced in opposition to the patent, it is so a bit more clearly where the evidence is even verbally the same." *Id.*, at 8 (internal citation omitted).[5]

The common-law presumption, in other words, reflected the universal understanding that a preponderance standard of proof was too "dubious" a basis to deem a patent invalid. *Ibid.;* see also *id.*, at 7 ("[A] patent . . . is presumed to be valid until the presumption has been overcome by convincing evidence of error").

Thus, by the time Congress enacted §282 and declared that a patent is "presumed valid," the presumption of patent validity had long been a fixture of the common law. According to its settled meaning, a defendant raising an invalidity defense bore "a heavy burden of persuasion," requiring proof of the defense by clear and convincing evidence. *Id.*, at 8. That is, the presumption encompassed not only an allocation of the burden of proof but also an imposition of a heightened standard of proof. Under the

––––––––

[5] Among other cases, Justice Cardozo cited *Cantrell* v. *Wallick*, 117 U. S. 689, 695–696 (1886) ("Not only is the burden of proof to make good this defence upon the party setting it up, but . . . every reasonable doubt should be resolved against him" (internal quotation marks omitted)); *Coffin* v. *Ogden*, 18 Wall. 120, 124 (1874) ("The burden of proof rests upon [the defendant], and every reasonable doubt should be resolved against him"); *The Barbed Wire Patent*, 143 U. S. 275, 285 (1892) ("[This] principle has been repeatedly acted upon in the different circuits"); and *Washburn* v. *Gould*, 29 F. Cas. 312, 320 (No. 17,214) (CC Mass. 1844) (charging jury that "[i]f it should so happen, that your minds are led to a reasonable doubt on the question, inasmuch as it is incumbent on the defendant to satisfy you beyond that doubt, you will find for the plaintiff").

general rule that a common-law term comes with its common-law meaning, we cannot conclude that Congress intended to "drop" the heightened standard proof from the presumption simply because §282 fails to reiterate it expressly. *Neder* v. *United States*, 527 U. S. 1, 23 (1999); see also *id.*, at 21 ("'Where Congress uses terms that have accumulated settled meaning under . . . the common law, [we] must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of those terms.'" (quoting *Nationwide Mut. Ins. Co.* v. *Darden*, 503 U. S. 318, 322 (1992))); *Standard Oil Co. of N. J.* v. *United Sates*, 221 U. S. 1, 59 (1911) ("[W]here words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country they are presumed to have been used in that sense . . ."). "On the contrary, we must *presume* that Congress intended to incorporate" the heightened standard of proof, "unless the statute otherwise dictates." *Neder*, 527 U. S., at 23 (internal quotation marks omitted).

We recognize that it may be unusual to treat a presumption as alone establishing the governing standard of proof. See, *e.g.*, J. Thayer, Preliminary Treatise on Evidence at the Common Law 336–337 (1898) (hereinafter Thayer) ("When . . . we read that the contrary of any particular presumption must be proved beyond a reasonable doubt, . . . it is to be recognized that we have something superadded to the rule of presumption, namely, another rule as to the amount of evidence which is needed to overcome the presumption"). But given how judges, including Justice Cardozo, repeatedly understood and explained the presumption of patent validity, we cannot accept Microsoft's argument that Congress used the words "presumed valid" to adopt only a procedural device for "shifting the burden of production," or for "shifting both the burden of production and the burden of persuasion." Brief for Petitioner 21–22 (emphasis deleted). Whatever the significance of a

presumption in the abstract, basic principles of statutory construction require us to assume that Congress meant to incorporate "the cluster of ideas" attached to the common-law term it adopted. *Beck*, 529 U. S., at 501 (internal quotation marks omitted). And *RCA* leaves no doubt that attached to the common-law presumption of patent validity was an expression as to its "force," 293 U. S., at 7—that is, the standard of proof required to overcome it.[6]

Resisting the conclusion that Congress adopted the heightened standard of proof reflected in our pre-1952 cases, Microsoft contends that those cases applied a clear-and-convincing standard of proof only in two limited circumstances, not in every case involving an invalidity defense. First, according to Microsoft, the heightened standard of proof applied in cases "involving oral testimony of prior invention," simply to account for the unreliability of such testimony. Brief for Petitioner 25. Second, Microsoft tells us, the heightened standard of proof applied to "invalidity challenges based on priority of invention," where that issue had previously been litigated between the parties in PTO proceedings. *Id.*, at 28.

Squint as we may, we fail to see the qualifications that Microsoft purports to identify in our cases. They certainly make no appearance in *RCA*'s explanation of the presump-

_____

[6]Microsoft objects that this reading of §282 "conflicts with the usual understanding of presumptions." Reply Brief for Petitioner 4. In support, it relies on the "understanding" reflected in Federal Rule of Evidence 301, which explains the ordinary effect of a presumption in federal civil actions. That Rule, however, postdates the 1952 Act by nearly 30 years, and it is not dispositive of how Congress in 1952 understood presumptions generally, much less the presumption of patent validity. In any event, the word "presumption" has often been used when another term might be more accurate. See Thayer 335 ("Often . . . maxims and ground principles get expressed in this form of a presumption perversely and inaccurately"). And, to the extent Congress used the words "presumed valid" in an imprecise way, we cannot fault it for following our lead.

tion of patent validity. *RCA* simply said, without qualifi-
cation, "that one otherwise an infringer who assails the
validity of a patent fair upon its face bears a heavy burden
of persuasion, and fails unless his evidence has more than
a dubious preponderance." 293 U. S., at 8; see also *id.*, at
7 ("A patent regularly issued, *and even more obviously*
a patent issued after a hearing of all the rival claimants,
is presumed to be valid until the presumption has been
overcome by convincing evidence of error" (emphasis
added)). Nor do they appear in any of our cases as express
limitations on the application of the heightened standard
of proof. Cf., *e.g., Smith* v. *Hall*, 301 U. S. 216, 233 (1937)
(citing *RCA* for the proposition that a "heavy burden of
persuasion . . . rests upon one who seeks to negative nov-
elty in a patent by showing prior use"); *Mumm* v. *Jacob E.
Decker & Sons*, 301 U. S. 168, 171 (1937) ("Not only is the
burden to make good this defense upon the party setting it
up, but his burden is a heavy one, as it has been held that
every reasonable doubt should be resolved against him"
(internal quotation marks omitted)). In fact, Microsoft
itself admits that our cases "could be read as announcing a
heightened standard applicable to all invalidity asser-
tions." Brief for Petitioner 30 (emphasis deleted).

Furthermore, we cannot agree that Microsoft's proposed
limitations are inherent—even if unexpressed—in our
pre-1952 cases. As early as 1874 we explained that the
burden of proving prior inventorship "rests upon [the de-
fendant], and every reasonable doubt should be resolved
against him," without tying that rule to the vagaries and
manipulability of oral testimony. *Coffin* v. *Ogden*, 18
Wall. 120, 124 (1874). And, more than 60 years later, we
applied that rule where the evidence in support of a prior-
use defense included documentary proof—not just oral
testimony—in a case presenting no priority issues at all.
See *Smith*, 301 U. S., at 221, 233. Thus, even if Congress
searched for some unstated limitations on the heightened

standard of proof in our cases, it would have found none.[7]

Microsoft also argues that the Federal Circuit's interpretation of §282's statement that "[a] patent shall be presumed valid" must fail because it renders superfluous the statute's additional statement that "[t]he burden of establishing invalidity of a patent . . . shall rest on the party asserting such invalidity." We agree that if the presumption imposes a heightened standard of proof on the patent challenger, then it alone suffices to establish that the defendant bears the burden of persuasion. Cf. *Director, Office of Workers' Compensation Programs* v. *Greenwich Collieries*, 512 U. S. 267, 278 (1994) ("A standard of proof . . . can apply only to a burden of persuasion"). Indeed, the Federal Circuit essentially recognized as much in *American Hoist.* See 725 F. 3d, at 1359.

But the canon against superfluity assists only where a competing interpretation gives effect "'to every clause and word of a statute.'" *Duncan* v. *Walker*, 533 U. S. 167, 174

---

[7] In a similar vein, Microsoft insists that there simply was no settled presumption of validity for Congress to codify in 1952. Microsoft points to a handful of district court decisions, which "question[ed] whether any presumption of validity was warranted," or which "required the patentee to prove the validity of his patent by a preponderance of the evidence." Brief for Petitioner 24 (emphasis deleted; brackets and internal quotation marks omitted); see, *e.g., Ginsberg* v. *Railway Express Agency, Inc.*, 72 F. Supp. 43, 44 (SDNY 1947) (stating, in dicta, that "[i]t may now well be said that no presumption whatever arises from the grant of patent"); see also *post,* at 1 (THOMAS, J., concurring in judgment). *RCA* makes clear, however, that the presumption of patent validity had an established meaning traceable to the mid-19th century, 293 U. S. 1, 7–8 (1934); that some lower courts doubted its wisdom or even pretended it did not exist is of no moment. Microsoft may be correct that Congress enacted §282 to correct lower courts that required the patentee to prove the validity of a patent. See *American Hoist & Derrick Co.* v. *Sowa & Sons, Inc.*, 725 F. 2d 1350, 1359 (CA Fed. 1984). But the language Congress selected reveals its intent not only to specify that the defendant bears the burden of proving invalidity but also that the evidence in support of the defense must be clear and convincing.

(2001) (quoting *United States* v. *Menasche*, 348 U. S. 528, 538–539 (1955)); see *Bruesewitz* v. *Wyeth LLC*, 562 U. S. \_\_\_, \_\_\_ (2011) (slip op., at 12). Here, no interpretation of §282—including the two alternatives advanced by Microsoft—avoids excess language. That is, if the presumption only "allocates the burden of production," Brief for Petitioner 21, or if it instead "shift[s] both the burden of production and the burden of persuasion," *id.*, at 22 (emphasis deleted), then *it* would be unnecessary in light of §282's statement that the challenger bears the "burden of establishing invalidity." See 21B Fed. Practice §5122, at 401 ("[T]he same party who has the burden of persuasion also starts out with the burden of producing evidence"). "There are times when Congress enacts provisions that are superfluous," *Corley* v. *United States*, 556 U. S. \_\_\_, \_\_\_ (2009) (ALITO, J., dissenting) (slip op., at 3), and the kind of excess language that Microsoft identifies in §282 is hardly unusual in comparison to other statutes that set forth a presumption, a burden of persuasion, and a standard of proof. Cf., *e.g.*, 28 U. S. C. §2254(e)(1).[8]

───────────

[8] For those of us for whom it is relevant, the legislative history of §282 provides additional evidence that Congress meant to codify the judge-made presumption of validity, not to set forth a new presumption of its own making. The accompanying House and Senate Reports both explain that §282 "introduces a declaration of the presumption of validity of a patent, which is now a statement made by courts in decisions, but has had no expression in the statute." H. R. Rep. No. 1923, 82d Cong., 2d Sess., 10 (1952) (hereinafter H. R. Rep.); S. Rep. No. 1979, 82d Cong., 2d Sess., 9 (1952) (hereinafter S. Rep.). To the same effect, the Reviser's Note indicates that §282's "first paragraph declares the existing presumption of validity of patents." Note following 35 U. S. C. §282 (1952 ed.).

Prior to 1952, the existing patent laws already incorporated the sum and substance of the presumption as Microsoft would define it—that is, they "assign[ed] the burden of proving invalidity to the accused infringer," Brief for Petitioner 14 (emphasis deleted). See 35 U. S. C. §69 (1946 ed.) (providing that a defendant in an infringement action "may plead" and "prove on trial" the invalidity of the patent as a defense); see

## B

Reprising the more limited argument that it pressed below, Microsoft argues in the alternative that a preponderance standard must at least apply where the evidence before the factfinder was not before the PTO during the examination process. In particular, it relies on *KSR Int'l Co.* v. *Teleflex Inc.*, 550 U. S. 398 (2007), where we observed that, in these circumstances, "the rationale underlying the presumption—that the PTO, in its expertise, has approved the claim—seems much diminished." *Id.*, at 426.

That statement is true enough, although other rationales may animate the presumption in such circumstances. See *The Barbed Wire Patent*, 143 U. S. 275, 292 (1892) (explaining that because the patentee "first published this device; put it upon record; made use of it for a practical purpose; and gave it to the public . . . . doubts . . . concerning the actual inventor . . . should be resolved in favor of the patentee"); cf. Brief for United States as *Amicus Curiae* 33 (arguing that even when the administrative correctness rationale has no relevance, the heightened standard of proof "serves to protect the patent holder's reliance interests" in disclosing an invention to the public in exchange for patent protection). The question remains, however, whether Congress has specified the applicable

---

also Patent Act of 1870, ch. 230, §61, 16 Stat. 208 (same); Patent Act of 1836, ch. 357, §15, 5 Stat. 123 (similar); Patent Act of 1793, ch. II, §6, 1 Stat. 322 (similar); *Coffin*, 18 Wall., at 124 (explaining that the Patent Act of 1836 "allowed a party sued for infringement to prove, among other defences, that the patentee was not the original and first inventor of the thing patented, or of a substantial and material part thereof claimed to be new" (internal quotation marks omitted)). The House and Senate Reports state, however, that §282 established a principle that previously "had no expression in the statute." H. R. Rep., at 10; S. Rep., at 9. Thus, because the only thing missing from §282's predecessor was the heightened standard of proof itself, Congress must have understood the presumption of patent validity to include the heightened standard of proof attached to it.

standard of proof. As established, Congress did just that by codifying the common-law presumption of patent validity and, implicitly, the heightened standard of proof attached to it.

Our pre-1952 cases never adopted or endorsed the kind of fluctuating standard of proof that Microsoft envisions. And they do not indicate, even in dicta, that anything less than a clear-and-convincing standard would ever apply to an invalidity defense raised in an infringement action. To the contrary, the Court spoke on this issue directly in *RCA*, stating that because the heightened standard of proof applied where the evidence before the court was "different" from that considered by the PTO, it applied even more clearly where the evidence was identical. 293 U. S., at 8. Likewise, the Court's statement that a "dubious preponderance" will never suffice to sustain an invalidity defense, *ibid.*, admitted of no apparent exceptions. Finally, this Court often applied the heightened standard of proof without any mention of whether the relevant prior-art evidence had been before the PTO examiner, in circumstances strongly suggesting it had not. See, *e.g.*, *Smith*, 301 U. S., at 227, 233.[9]

Nothing in §282's text suggests that Congress meant to

---

[9] Microsoft cites numerous court of appeals decisions as support for its claim that a preponderance standard must apply in the event that the evidence in the infringement action varies from that considered by the PTO. We see no hint of the hybrid standard of proof that Microsoft advocates in these cases. Indeed, in some of these cases it appears that the court even evaluated the evidence according to a heightened standard of proof. See *Jacuzzi Bros., Inc.* v. *Berkeley Pump Co.*, 191 F. 2d 632, 634 (CA9 1951) ("Although it is not expressly stated that th[e] conclusion [of invalidity] is based upon evidence establishing the thesis beyond a reasonable doubt, the Trial Court expressed no doubt. And the record shows that such conclusion was supported by substantial evidence"); *Western Auto Supply Co.* v. *American-National Co.*, 114 F. 2d 711, 713 (CA6 1940) (concluding that the patent was invalid where the court "entertain[ed] no doubt" on the question).

depart from that understanding to enact a standard of proof that would rise and fall with the facts of each case. Indeed, had Congress intended to drop the heightened standard of proof where the evidence before the jury varied from that before the PTO—and thus to take the unusual and impractical step of enacting a variable standard of proof that must itself be adjudicated in each case, cf. *Santosky* v. *Kramer*, 455 U. S. 745, 757 (1982)[10]—we assume it would have said so expressly.

To be sure, numerous courts of appeals in the years preceding the 1952 Act observed that the presumption of validity is "weakened" or "dissipated" in the circumstance that the evidence in an infringement action was never considered by the PTO. See *Jacuzzi Bros.*, *Inc.* v. *Berkeley Pump Co.*, 191 F. 2d 632, 634 (CA9 1951) ("largely dissipated"); *H. Schindler & Co.* v. *C. Saladino & Sons*, 81 F. 2d 649, 651 (CA1 1936) ("weakened"); *Gillette Safety Razor Co.* v. *Cliff Weil Cigar Co.*, 107 F. 2d 105, 107 (CA4 1939) ("greatly weakened"); *Butler Mfg. Co.* v. *Enterprise Cleaning Co.*, 81 F. 2d 711, 716 (CA8 1936) ("weakened"). But we cannot read these cases to hold or even to suggest that a preponderance standard would apply in such cir-

---

[10] Not the least of the impracticalities of such an approach arises from the fact that whether a PTO examiner considered a particular reference will often be a question without a clear answer. In granting a patent, an examiner is under no duty to cite every reference he considers. 1 Dept. of Commerce, PTO, Manual of Patent Examining Procedure §904.03, p. 900–51 (8th rev. ed. 2010) ("The examiner is not called upon to cite all references that may be available, but only the 'best.' Multiplying references, any one of which is as good as, but no better than, the others, adds to the burden and cost of prosecution and should therefore be avoided" (emphasis deleted)); Manual of Patent Examining Procedure §904.02, p. 129 (1st rev. ed. 1952) (same), http://www.uspto.gov/web/offices/pac/mpep/old/E1R3_900.pdf (all Internet materials as visited June 6, 2011, and available in Clerk of Court's case file); see also Brief for Respondents 45–46 (describing additional impracticalities). We see no indication in §282 that Congress meant to require collateral litigation on such an inherently uncertain question.

cumstances, and we decline to impute such a reading to Congress. Instead, we understand these cases to reflect the same commonsense principle that the Federal Circuit has recognized throughout its existence—namely, that new evidence supporting an invalidity defense may "carry more weight" in an infringement action than evidence previously considered by the PTO, *American Hoist*, 725 F. 2d, at 1360. As Judge Rich explained:

> "When new evidence touching validity of the patent not considered by the PTO is relied on, the tribunal considering it is not faced with having to disagree with the PTO or with deferring to its judgment or with taking its expertise into account. The evidence may, therefore, carry more weight and go further toward sustaining the attacker's unchanging burden." *Ibid.* (emphasis deleted)

See also *SIBIA Neurosciences, Inc.* v. *Cadus Pharmaceutical Corp.*, 225 F. 3d 1349, 1355–1356 (CA Fed. 2000) ("[T]he alleged infringer's burden may be more easily carried because of th[e] additional [evidence]"); *Group One, Ltd.* v. *Hallmark Cards, Inc.*, 407 F. 3d 1297, 1306 (CA Fed. 2005) (similar).

Simply put, if the PTO did not have all material facts before it, its considered judgment may lose significant force. Cf. *KSR*, 550 U. S., at 427. And, concomitantly, the challenger's burden to persuade the jury of its invalidity defense by clear and convincing evidence may be easier to sustain. In this respect, although we have no occasion to endorse any particular formulation, we note that a jury instruction on the effect of new evidence can, and when requested, most often should be given. When warranted, the jury may be instructed to consider that it has heard evidence that the PTO had no opportunity to evaluate before granting the patent. When it is disputed whether the evidence presented to the jury differs from that evalu-

ated by the PTO, the jury may be instructed to consider that question. In either case, the jury may be instructed to evaluate whether the evidence before it is materially new, and if so, to consider that fact when determining whether an invalidity defense has been proved by clear and convincing evidence. Cf., *e.g.*, *Mendenhall* v. *Cedarapids, Inc.*, 5 F. 3d 1557, 1563–1564 (CA Fed. 1993); see also Brief for International Business Machines Corp. as *Amicus Curiae* 31–37. Although Microsoft emphasized in its argument to the jury that S4 was never considered by the PTO, it failed to request an instruction along these lines from the District Court. Now, in its reply brief in this Court, Microsoft insists that an instruction of this kind was warranted. Reply Brief for Petitioner 22–23. That argument, however, comes far too late, and we therefore refuse to consider it. See *Rent-A-Center, West, Inc.* v. *Jackson*, 561 U. S. ___ , ___ (2010) (slip op., at 12); cf. Fed. Rule Civ. Proc. 51(d)(1)(B).

## III

The parties and their *amici* have presented opposing views as to the wisdom of the clear-and-convincing-evidence standard that Congress adopted. Microsoft and its *amici* contend that the heightened standard of proof dampens innovation by unduly insulating "bad" patents from invalidity challenges. They point to the high invalidation rate as evidence that the PTO grants patent protection to too many undeserving "inventions." They claim that *inter partes* reexamination proceedings before the PTO cannot fix the problem, as some grounds for invalidation (like the on-sale bar at issue here) cannot be raised in such proceedings. They question the deference that the PTO's expert determinations warrant, in light of the agency's resources and procedures, which they deem inadequate. And, they insist that the heightened standard of proof essentially causes juries to abdicate their role in

reviewing invalidity claims raised in infringement actions.

For their part, i4i and its *amici*, including the United States, contend that the heightened standard of proof properly limits the circumstances in which a lay jury overturns the considered judgment of an expert agency. They claim that the heightened standard of proof is an essential component of the patent "bargain," see *Bonito Boats, Inc.* v. *Thunder Craft Boats, Inc.*, 489 U. S. 141, 150–151 (1989), and the incentives for inventors to disclose their innovations to the public in exchange for patent protection. They disagree with the notion that the patent issuance rate is above the optimal level. They explain that limits on the reexamination process reflect a judgment by Congress as to the appropriate degree of interference with patentees' reliance interests. Finally, they maintain that juries that are properly instructed as to the application of the clear-and-convincing-evidence standard can, and often do, find an invalidity defense established.

We find ourselves in no position to judge the comparative force of these policy arguments. For nearly 30 years, the Federal Circuit has interpreted §282 as we do today. During this period, Congress has often amended §282, see, *e.g.,* Pub. L. 104–141, §2, 109 Stat. 352; Pub. L. 98–417, §203, 98 Stat. 1603; not once, so far as we (and Microsoft) are aware, has it even considered a proposal to lower the standard of proof, see Tr. Oral Arg. 10. Moreover, Congress has amended the patent laws to account for concerns about "bad" patents, including by expanding the reexamination process to provide for *inter partes* proceedings. See Optional Inter Partes Reexamination Procedure Act of 1999, 113 Stat. 1501A–567, codified at 35 U. S. C. §311 *et seq.* Through it all, the evidentiary standard adopted in §282 has gone untouched. Indeed, Congress has left the Federal Circuit's interpretation of §282 in place despite ongoing criticism, both from within the Federal Govern-

ment and without.[11]

Congress specified the applicable standard of proof in 1952 when it codified the common-law presumption of patent validity.  Since then, it has allowed the Federal Circuit's correct interpretation of §282 to stand.  Any re-calibration of the standard of proof remains in its hands.

*        *        *

For the reasons stated, the judgment of the Court of Appeals for the Federal Circuit is

*Affirmed.*

THE CHIEF JUSTICE took no part in the consideration or decision of this case.

---

[11] See, *e.g.*, FTC, To Promote Innovation: The Proper Balance of Competition and Patent Law and Policy 28 (Oct. 2003), http://www.ftc.gov/os/2003/10/innovationrpt.pdf (recommending that "legislation be enacted specifying that challenges to the validity of a patent be determined based on a preponderance of the evidence"); Alsup, Memo to Congress: A District Judge's Proposal for Patent Reform, 24 Berkeley Tech. L. J. 1647, 1655 (2009) (same); Lichtman & Lemley, Rethinking Patent Law's Presumption of Validity, 60 Stan. L. Rev. 45, 60 (2007) (proposing "statutory amendment or . . . judicial reinterpretation of the existing statute and its associated case law" to lower the standard of proof to a preponderance of the evidence (footnote omitted)).

# SUPREME COURT OF THE UNITED STATES

_____

No. 10–290

_____

## MICROSOFT CORPORATION, PETITIONER *v.* i4i LIMITED PARTNERSHIP ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

[June 9, 2011]

JUSTICE BREYER, with whom JUSTICE SCALIA and JUSTICE ALITO join, concurring.

I join the Court's opinion in full. I write separately because, given the technical but important nature of the invalidity question, I believe it worth emphasizing that in this area of law as in others the evidentiary standard of proof applies to questions of fact and not to questions of law. See, *e.g., Addington* v. *Texas*, 441 U. S. 418, 423 (1979). Thus a factfinder must use the "clear and convincing" standard where there are disputes about, say, when a product was first sold or whether a prior art reference had been published.

Many claims of invalidity rest, however, not upon factual disputes, but upon how the law applies to facts as given. Do the given facts show that the product was previously "in public use"? 35 U. S. C. §102(b). Do they show that the invention was "nove[l]" and that it was "nonobvious"? §§102, 103. Do they show that the patent applicant described his claims properly? §112. Where the ultimate question of patent validity turns on the correct answer to legal questions—what these subsidiary legal standards mean or how they apply to the facts as given—today's strict standard of proof has no application. See, *e.g., Graham* v. *John Deere Co. of Kansas City*, 383 U. S. 1, 17 (1966); *Minnesota Mining & Mfg. Co.* v. *Chemque, Inc.*,

303 F. 3d 1294, 1301 (CA Fed. 2002); *Transocean Offshore Deepwater Drilling, Inc.* v. *Maersk Contractors USA, Inc.*, 617 F. 3d 1296, 1305 (CA Fed. 2010); cf. *Markman* v. *Westview Instruments, Inc.*, 517 U. S. 370 (1996).

Courts can help to keep the application of today's "clear and convincing" standard within its proper legal bounds by separating factual and legal aspects of an invalidity claim, say, by using instructions based on case-specific circumstances that help the jury make the distinction or by using interrogatories and special verdicts to make clear which specific factual findings underlie the jury's conclusions. See Fed. Rules Civ. Proc. 49 and 51. By isolating the facts (determined with help of the "clear and convincing" standard), courts can thereby assure the proper interpretation or application of the correct legal standard (without use of the "clear and convincing" standard). By preventing the "clear and convincing" standard from roaming outside its fact-related reservation, courts can increase the likelihood that discoveries or inventions will not receive legal protection where none is due.

# SUPREME COURT OF THE UNITED STATES

No. 10–290

---

## MICROSOFT CORPORATION, PETITIONER *v.* i4i LIMITED PARTNERSHIP ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

[June 9, 2011]

JUSTICE THOMAS, concurring in the judgment.

I am not persuaded that Congress codified a standard of proof when it stated in the Patent Act of 1952 that "[a] patent shall be presumed valid." 35 U. S. C. §282; see *ante*, at 7. "[W]here Congress borrows terms of art," this Court presumes that Congress "knows and adopts the cluster of ideas that were attached to each borrowed word . . . and the meaning its use will convey to the judicial mind." *Morissette* v. *United States*, 342 U. S. 246, 263 (1952). But I do not think that the words "[a] patent shall be presumed valid" so clearly conveyed a particular standard of proof to the judicial mind in 1952 as to constitute a term of art. See, *e.g.*, *ante*, at 12, n. 7 ("[S]ome lower courts doubted [the presumption's] wisdom or even pretended it did not exist"); *Philip A. Hunt Co.* v. *Mallinckrodt Chemical Works*, 72 F. Supp. 865, 869 (EDNY 1947) ("[T]he impact upon the presumption of many late decisions seems to have rendered it as attenuated . . . as the shadow of a wraith"); *Myers* v. *Beall Pipe & Tank Corp.*, 90 F. Supp. 265, 268 (D Ore. 1948) ("[T]he presumption of [patent] validity . . . is treated by the appellate courts as evanescent as a cloud"); *American Hoist & Derrick Co.* v. *Sowa & Sons, Inc.*, 725 F. 2d 1350, 1359 (CA Fed. 1984) ("[I]n 1952, the case law was far from consistent—even contradictory—about the presumption"); cf. *Bruesewitz* v.

*Wyeth LLC*, 562 U. S. ___, ___–___ (2011) (slip op., at 9–10) (Congress' use of a word that is similar to a term of art does not codify the term of art).  Therefore, I would not conclude that Congress' use of that phrase codified a standard of proof.

Nevertheless, I reach the same outcome as the Court. Because §282 is silent as to the standard of proof, it did not alter the common-law rule.  See *ante*, at 6 ("[§282] includes no express articulation of the standard of proof"). For that reason, I agree with the Court that the heightened standard of proof set forth in *Radio Corp. of America* v. *Radio Engineering Laboratories, Inc.*, 293 U. S. 1 (1934)—which has never been overruled by this Court or modified by Congress—applies.